Argued and submitted May 9, 1997; resubmitted June 11, decision of Court of Appeals reversed, judgment of circuit court affirmed November 27, 1998

David FIDANQUE
and Janet Arenz,
*Petitioners on Review,*

*v.*

STATE OF OREGON,
by and through the
Oregon Government Standards
and Practices Commission,
*Respondent on Review.*

(CC 94C-11492; CA A86332; SC S43705)

969 P2d 376

Thomas M. Christ, ACLU Foundation of Oregon, Inc., Portland, argued the cause and filed the brief for petitioners on review.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## GILLETTE, J.

Plaintiffs are two paid lobbyists for the American Civil Liberties Union. They brought this action for declaratory and injunctive relief, seeking a judicial determination that ORS 171.743,[1] a statute requiring certain lobbyists to pay a biennial registration fee to the Oregon Government Standards and Practices Commission (Commission), is constitutionally unsound. Plaintiffs based their complaint on two provisions of the Oregon Constitution—sections 8 and 26 of Article I—and on the First Amendment to the United States Constitution.[2] On cross-motions for judgment on the pleadings, the trial court concluded that the statute violates both of the Oregon constitutional guarantees and entered judgment accordingly. The Court of Appeals reversed that decision. *Fidanque v. Oregon Govt. Standards and Practices*, 141 Or App 495, 920 P2d 154 (1996). We allowed plaintiffs' petition for review and now conclude that ORS 171.743 violates Article I, section 8, of the Oregon Constitution. Consequently, we reverse the decision of the Court of Appeals.

The challenged statute was enacted in 1993 and was added to a previously existing body of statutes devoted to the regulation of legislative lobbying. Pursuant to those provisions, which are found in ORS chapter 171, "lobbyists" are

---

[1] The text of ORS 171.743 is set out below, 328 Or at 5.

[2] Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 26, of the Oregon Constitution, provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of their greviances (*sic*)."

The First Amendment to the United States Constitution provides:

"Congress shall make no law * * * abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The First Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g., New York Times Co. v. Sullivan*, 376 US 254, 264 n 4, 84 S Ct 710, 11 L Ed 2d 686 (1964) (so holding).

required to register with the Commission by filing and periodically updating a statement identifying themselves and whom they represent and describing their clients' areas of interest. ORS 171.740. Lobbyists also must file regular statements disclosing the amount of money expended for the purpose of lobbying, including the names of any legislative or executive official for whose benefit they make any expenditure exceeding $25. ORS 171.745(1).

"Lobbyists" are defined for purposes of the above statutes by ORS 171.725(8):

" 'Lobbyist' means:

"(a)   Any individual who agrees to provide personal services for money or any other consideration for the purpose of *lobbying*.

"(b)   Any person not otherwise subject to paragraph (a) of this subsection who provides personal services as a representative of a corporation, association, organization or other group, for the purpose of *lobbying*.

"(c)   Any pubic official who *lobbies*."[3]

(Emphasis added.) "Lobbying" is defined, in turn, by ORS 171.725(7):

" 'Lobbying' means influencing, or attempting to influence, legislative action through oral or written communication with legislative officials, solicitation of others to influence or attempt to influence legislative action or attempting to obtain the good will of legislative officials."

In 1993, the legislature amended the registration provision at ORS 171.740 to require lobbyists to reregister every two years. At the same time, it enacted ORS 171.743, the registration fee statute that is the subject of the present challenge. That statute provides:

---

[3] Certain persons who otherwise might be subjected to the requirements of ORS 171.740 and 171.745 are exempted from those requirements by ORS 171.735. Exempted categories of individuals include members of the news media, legislative officials acting in an official capacity, unpaid lobbyists who limit their lobbying activities to formal appearances before legislative committees and certain other public bodies, and persons who spend no more than 24 hours and $100 per calendar quarter on lobbying. ORS 171.735.

"(1) The Oregon Government Standards and Practices Commission shall impose and collect the following lobbyist registration fees:

"(a) For each person described in ORS 171.725(8) and registered with the commission, $50.

"(b) Notwithstanding paragraph (a) of this subsection, for each person described in ORS 171.725(8)(b) and registered with the commission and who is not compensated for the person's services as a representative of a corporation, association, organization or other group, $0.

"(2) Fees are nonrefundable.

"(3) All moneys received by the commission under this section shall be paid into the General Fund in the State Treasury to the credit of the commission. Such moneys are continuously appropriated and shall be used only for the administration and enforcement of the powers and duties of the commission."

Plaintiffs do not challenge the preexisting statutory requirements that they register with the state and disclose certain aspects of their lobbying activities. Their sole objection is to the additional imposition of a registration fee.

In keeping with our traditional practice, we first address the claims asserted under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 262-65, 666 P2d 1316 (1983) (explaining that paradigm). Although we could begin our inquiry under either Article I, section 8, or Article I, section 26, we choose the former because, as it turns out, plaintiffs' claim is vindicated fully under that provision.

Our starting point is the analytical framework, first set out in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), that this court traditionally has employed in evaluating Article I, section 8, challenges. The court summarized that framework in *State v. Plowman*, 314 Or 157, 163-64, 838 P2d 558 (1992):

"In *State v. Robertson*, * * * this court established a framework for evaluating whether a law violates Article I, section 8. First, the court recognized a distinction between laws that focus on the content of speech or writing and laws that focus on proscribing the pursuit or accomplishment of

forbidden results. * * * The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,

> " 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 [when the Oregon Constitution went into effect] demonstrably were not intended to reach.' * * *

> "Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. * * * Such laws are analyzed for overbreadth[.]

> "* * * * *

> "The second kind of law also focuses on forbidden effects but without referring to expression at all. Of that category, this court wrote:

> " 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to Article I, section 8.' "

(Emphasis, citations, and footnote omitted.)

Plaintiffs argue, first, that ORS 171.743 is written in terms directed to the substance of a subject of communication. They argue that, although the statute applies, by its terms, to "lobby*ists*," its real object is "lobby*ing*," an activity that primarily is defined in terms of a particular type of speech, *viz.*, speech that pertains to, and is designed to influence, legislative action.

The state responds that, by its terms, ORS 171.743 applies to lobbyists *as a professional group*, and not to the act of lobbying itself. The state acknowledges that the profession is defined, at least in part, by the type of communication in which its practitioners engage, but it argues that that fact

does not, and cannot, mean that that type of communication is the object of the statute, for purposes of Article I, section 8:

"Many professions are associated with expression. The practice of law, for example, is defined as advising another person about his or her particular legal rights. *See State Bar v. Security Escrows, Inc.*, 233 Or 80, 89, 377 P2d 334 (1962) (defining practice of law). Teaching consists of communicating about specific disciplines; psychiatry consists of communication between the patient and the doctor about the patient's state of mind; and securities brokers promote and sell stocks and bonds.

"If plaintiffs are correct, any law that regulates a person's ability to practice those professions would automatically be invalid unless it comes within a well-established historical exception."

We agree with the state that the mere fact that a profession is *associated* with a certain kind of expression does not transform every statute that regulates that profession into an attack on expression. At the same time, we recognize that that proposition goes only so far: At some point, there may be so little to distinguish between the saying of a thing and the "profession" of saying it that permitting a regulation on the theory that it is directed at the profession, rather than at the statement, would represent a triumph of form over substance. And that, in this court's view, is the case here. Lobbying is political speech, and being a lobbyist is the act of being a communicator to the legislature on political subjects.

There is no question that ORS 171.743 applies to persons who are defined, to a large extent, by their association with a certain variety of speech. ORS 171.743 imposes a fee on "person[s] described in ORS 171.725(8) and registered with the commission," *viz.*, registered lobbyists. The persons described in ORS 171.725—"lobbyists"—are defined by their participation in lobbying, an activity that is primarily expressive. Of course, participation in a certain kind of expression is by no means the *only* thing that defines the lobbying profession under the statute. Lobbyists also are defined by their involvement in "attempt[ing] to obtain the good will of legislative officials" and by the fact that they operate in a representative and, often, paid capacity. ORS 171.725(7) and (8). But even those criteria of lobbying are bound up closely with

the essentially expressive nature of the profession. Lobbying is expression, for the purposes of the first *Robertson* category, and ORS 171.743 extracts a fee for engaging in that activity.[4]

The foregoing brings us again to the wording of the statute. The state argues, and we can assume for the purposes of this opinion, that a fee may be charged for the expenses that the government incurs as the result of a particular communicative activity, such as the expense of providing added police protection for a parade. The state argues here that that is all that ORS 171.743 does. Therefore, the state reasons, the statute is constitutional.

Whatever might be the permissibility of a fee imposed specifically and directly for the purpose that the state espouses, it is clear from its wording that the present version of ORS 171.743 does something different. As noted, the statute directs that the money collected "shall be used only for the administration and enforcement of the powers and duties of the commission." In spite of the use of the word "only," those powers and duties extend far beyond keeping a record of lobbyists. *See generally* ORS ch 244 (declaring public office to be a public trust, establishing standards for ethical behavior of public officials, and establishing Oregon Government Standards and Practices Commission to oversee enforcement of standards). Thus, the statute directs that a fee be imposed on a certain variety of communicative activity—political speech—for the purpose of funding a government agency that not only is responsible for registering lobbyists, but also has a number of other duties relating to state and local government officials. The work of that agency is of great importance, to be sure, but the protection of the communicative activity is constitutionally mandated.

_____

[4] At first blush, the fee requirement appears to be content-neutral, a fact perhaps best illustrated by the circumstance that, when paid lobbyists are aligned both for and against a particular legislative proposal, each is subject to paying the fee. But that scenario does not keep the lobbying activity from being protected expression. Viewed with a longer lens, ORS 171.743 requires payment of a fee that can be avoided by the simple expedient of never espousing a preference concerning the content of Oregon statutory law, except for the purposes of generating good will. So viewed, the statute turns out not to be content-neutral at all. Its focus is political speech.

The state argues in the alternative that, whatever the facial scope of the statute, the amount of the fee imposed actually is a reasonable approximation—in fact, a significant undercharge—of the true cost of operating the lobbyist registration program. It cites legislative history that indicates that the legislature relied on an estimate made by legislative counsel to the effect that the cost to the Commission was at least $100 for each lobbyist registered.

■ We reject that argument for two reasons. The first is that the statute on its face does not tie the fee to the costs associated with registering lobbyists. To resort to legislative history to augment the statutory meaning in the manner suggested is contrary to this court's practice in cases, like this one, in which the meaning of a statute is clear from the wording of the statute itself, viewed in context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (setting out hierarchical paradigm for statutory construction). The second is that the history on which the state relies, even if we were to reach it, is not sufficiently detailed to allow this court to determine whether the criteria used in making the estimate were such as to make them meaningful for constitutional purposes. At bottom, the question whether the amount of the fee does or does not approximate the cost to the Commission of operating the lobbyist registration program is one of fact, perhaps appropriate to a case involving an "as applied" challenge to an otherwise facially valid statute, but not to a facial challenge like that mounted here.[5]

Based on the foregoing analysis, we hold that ORS 171.743 impermissibly restricts the right to speak, write, or print freely on any subject whatever under Article I, section 8, of the Oregon Constitution. It is unconstitutional.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[5] The state does not argue that the fee imposed by ORS 171.743 can be justified by any historical or other exception to the scope of Article I, section 8, and we know of none.