Argued and submitted August 13, order of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings December 31, 2009

Fred VANNATTA
and Center To Protect Free Speech, Inc.,
an Oregon Not-For-Profit Corporation,
*Plaintiffs-Appellants,*

*v.*

OREGON GOVERNMENT ETHICS COMMISSION,
formerly known as the
Oregon Government Standards and Practices Commission;
and State of Oregon,
*Defendants-Respondents.*

(CC 07C20464; CA A140080; SC S057570)

222 P3d 1077

450

John DiLorenzo, Jr., Davis Wright Tremaine LLP, Portland, argued the cause for plaintiffs-appellants. With him on the briefs were Gregory A. Chaimov, Aaron K. Stuckey, and Alan J. Galloway.

Anna M. Joyce, Assistant Attorney General, Salem, argued the cause for defendants-respondents. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Linda K. Williams, Portland, and Daniel W. Meek, Portland, filed a brief on behalf of *amici curiae* Joan Horton, Ken Lewis, Bryn Hazell, Francis Nelson, Tom Civiletti, David Delk, and Gary Duell.

DE MUNIZ, C. J.

### DE MUNIZ, C. J.

Plaintiffs Fred Vannatta and Center To Protect Free Speech, Inc., brought this action for declaratory and injunctive relief, asserting that ORS 244.025(1) - (4) and ORS 244.042 (which, in general terms, regulate the solicitation, offering, and receipt of gifts by certain public and other persons) violate Article I, sections 8 and 26, of the Oregon Constitution and the First Amendment to the United States Constitution and therefore are unenforceable. We discuss the content of those statutes in greater detail below.

The trial court rejected plaintiffs' constitutional arguments and granted summary judgment in favor of defendants (the state). On review, this court views the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party—in this case, plaintiffs. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. Plaintiffs assert that there are no factual disputes in this case and that this court should review the trial court's decision for errors of law. The state does not contest that characterization.

We take the facts from the trial court record on summary judgment. Plaintiff Center To Protect Free Speech, Inc. (Center) is a not-for-profit Oregon corporation. Plaintiff Vannatta is an elector and taxpayer and serves as the president of and registered lobbyist for Center. As described in their amended complaint, Vannatta and Center intend to engage in conduct that would violate the statutory gift restrictions in ORS chapter 244, including:

> "[O]btaining the good will of public officials and candidates for public office through offering and providing public officials, their families and candidates for public office entertainment, business meals with an aggregate value of more than $50 in a calendar year in connection with their discussions, and honorariums in connection with official duties."

Plaintiffs assert that, because of the restrictions in ORS 244.025 and ORS 244.042, "plaintiffs and some (but not all) other lobbyists in Oregon are prevented from engaging" in

those activities and those activities are forms of expression protected by the state and federal constitutions.

In a letter opinion, the trial court agreed with plaintiffs that the statutes at issue in this case regulate gifts that are forms of constitutionally protected expression. However, the trial court concluded that the regulation of that form of expression is permissible, in part because giving gifts to public officials or candidates can create the appearance of bribery, corruption, and impropriety. The trial court later entered a general judgment in favor of the state that declared that the statutory provisions challenged by plaintiffs are valid and enforceable.[1]

---

[1] Plaintiffs appealed the judgment, and, pursuant to Oregon Laws 2009, chapter 277, section 1, the parties filed a joint motion in the Court of Appeals to certify the appeal to this court. As required, the Court of Appeals granted that motion on July 13, 2009, and this court accepted certification that same day.

[2] ORS 244.025 provides, in part:

"(1) During a calendar year, a public official, a candidate for public office or a relative or member of the household of the public official or candidate may not solicit or receive, directly or indirectly, any gift or gifts with an aggregate value in excess of $50 from any single source that could reasonably be known to have a legislative or administrative interest in any governmental agency in which the public official holds, or the candidate if elected would hold, any official position or over which the public official exercises, or the candidate if elected would exercise, any authority.

"(2) During a calendar year, a person who has a legislative or administrative interest in any governmental agency in which a public official holds any official position or over which the public official exercises any authority may not offer to the public official or a relative or member of the household of the public official any gift or gifts with an aggregate value in excess of $50.

"(3) During a calendar year, a person who has a legislative or administrative interest in any governmental agency in which a candidate for public office if elected would hold any official position or over which the candidate if elected would exercise any authority may not offer to the candidate or a relative or member of the household of the candidate any gift or gifts with an aggregate value in excess of $50.

"(4) Notwithstanding subsection (1) of this section:

"(a) A public official, a candidate for public office or a relative or member of the household of the public official or candidate may not solicit or receive, directly or indirectly, any gift of payment of expenses for entertainment from any single source that could reasonably be known to have a legislative or administrative interest in any governmental agency in which the public official holds, or the candidate if elected would hold, any official position or over which the public official exercises, or the candidate if elected would exercise, any authority.

"(b) A person who has a legislative or administrative interest in any governmental agency in which a public official holds any official position or over

In this court, plaintiffs argue that ORS 244.025[2] and ORS 244.042[3] impermissibly restrain free expression and lobbying activities in violation of Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution by, among other things, prohibiting expenditures designed to facilitate dialogue and obtain good-will with public officials. Plaintiffs also argue that the restrictions impermissibly discriminate between different types of speech and different classifications of speakers. Finally, plaintiffs argue that the statutory restrictions violate Article I, section 26, of the Oregon Constitution in that they impermissibly restrain plaintiffs' rights to instruct their representatives and to apply to the Legislative Assembly for the redress of grievances.

ORS chapter 244, sometimes described as the "code of government ethics," was referred to the people by the legislature and adopted by the voters in 1974. ORS chapter 244 is designed " 'to deter violation of the legislative policy of safeguarding the public trust inherent in holding a public office.' " *City of Tualatin v. City-County Ins. Services Trust*, 321 Or

which the public official exercises any authority may not offer to the public official or a relative or member of the household of the public official any gift of payment of expenses for entertainment.

"(c) A person who has a legislative or administrative interest in any governmental agency in which a candidate for public office if elected would hold any official position or over which the candidate if elected would exercise any authority may not offer to the candidate or a relative or member of the household of the candidate any gift of payment of expenses for entertainment."

[3] ORS 244.042 provides:

"(1) Except as provided in subsection (3) of this section, a public official may not solicit or receive, whether directly or indirectly, honoraria for the public official or any member of the household of the public official if the honoraria are solicited or received in connection with the official duties of the public official.

"(2) Except as provided in subsection (3) of this section, a candidate for public office may not solicit or receive, whether directly or indirectly, honoraria for the candidate or any member of the household of the candidate if the honoraria are solicited or received in connection with the official duties of the public office for which the person is a candidate.

"(3) This section does not prohibit:

"(a) The solicitation or receipt of an honorarium or a certificate, plaque, commemorative token or other item with a value of $50 or less; or

"(b) The solicitation or receipt of an honorarium for services performed in relation to the private profession, occupation, avocation or expertise of the public official or candidate."

164, 172, 894 P2d 1158 (1995) (quoting *Groener v. Oregon Gov't Ethics Comm.*, 59 Or App 459, 469, 651 P2d 736 (1982)). Since its enactment, the code of government ethics has placed restrictions on the solicitation and receipt of gifts or favors in excess of $100 by public officials or candidates for office. *Former* ORS 244.040(1) - (2), (5) (2005). In 2007, however, the legislature enacted Senate Bill (SB) 10 (2007), which made several amendments to the code of government ethics, including lowering the monetary limit on certain gifts to $50. Or Laws 2007, ch 877, § 18. Plaintiffs challenge is directed to those 2007 legislative changes.[4]

ORS 244.025(1) - (4) and ORS 244.042 enact several distinct restrictions concerning gift giving to public officials. Those restrictions fall into three categories. The first category, set forth in ORS 244.025(1) and (4)(a) and ORS 244.042(1) and (2), restricts the *receipt* of specified gifts or gifts of payment for entertainment expenses.[5] The second

---

[4] During the 2009 legislative session, the legislature enacted Senate Bill (SB) 30 (2009), which amended several portions of ORS chapter 244, including ORS 244.020, ORS 244.025, and ORS 244.042. Because those amendments have no bearing on our discussion below, we refer to the 2007 version of the statute throughout this opinion.

[5] ORS 244.020(5)(a) defines "gift" as:

"[S]omething of economic value given to a public official or a relative or member of the household of the public official:

"(A) Without valuable consideration of equivalent value, including the full or partial forgiveness of indebtedness, which is not extended to others who are not public officials or the relatives or members of the household of public officials on the same terms and conditions; or

"(B) For valuable consideration less than that required from others who are not public officials.

"(b) 'Gift' does not mean:

"(A) Contributions as defined in ORS 260.005.

"(B) Gifts from relatives or members of the household of the public official.

"(C) An unsolicited token or award of appreciation in the form of a plaque, trophy, desk item, wall memento or similar item, with a resale value reasonably expected to be less than $25.

"(D) Informational material, publications or subscriptions related to the recipient's performance of official duties.

"(E) Admission provided to or the cost of food or beverage consumed by a public official, or a member of the household or staff of the public official when accompanying the public official, at a reception, meal or meeting held by an organization before whom the public official appears to speak or to answer questions as part of a scheduled program.

category, set forth in ORS 244.025(2), (3), and (4)(b) and (c), restricts the *offering* of specified gifts or gifts of payment for entertainment expenses. The third category, set forth in ORS 244.025(1) and (4)(a), and ORS 244.042(1) and (2), restricts the *solicitation* of specified gifts or gifts of payment for entertainment expenses.[6] We analyze each restriction separately to determine its constitutionality under Article I, section 8.

## I. ARTICLE I, SECTION 8

Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court set out a framework within which to analyze challenges to statutes under Article I, section 8, which the court later summarized in *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993):

"First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus

---

"(F) Reasonable expenses paid by any unit of the federal government, a state or local government, a Native American tribe that is recognized by federal law or formally acknowledged by a state, a membership organization to which a public body as defined in ORS 174.109 pays membership dues or a not-for-profit corporation that is tax exempt under section 501(c)(3) of the Internal Revenue Code and that receives less than five percent of its funding from for-profit organizations or entities, for attendance at a convention, fact-finding mission or trip, or other meeting if the public official is scheduled to deliver a speech, make a presentation, participate on a panel or represent state government as defined in ORS 174.111, a local government as defined in ORS 174.116 or a special government body as defined in ORS 174.117."

[6] For ease of discussion, we refer in this opinion to the person identified in ORS 244.025(1) and (4)(a) "a public official, candidate for public office or a relative or member of the household of the public official or candidate" as a "public official." Additionally, we refer to the persons or entities identified in ORS 244.025(1) and (4)(a)

"any single source that could reasonably be known to have a legislative or administrative interest in any governmental agency in which the public officials, or the candidate if elected would hold, any official position or over which the public official exercises, or the candidate if elected would exercise, any authority"

as a "lobbyist."

on proscribing the pursuit or accomplishment of *forbidden results*. [*Robertson*,] 293 Or at 416-17. The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,

> " 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *Id.* at 412.

"Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. The coercion law at issue in *Robertson* was of that category. *Id.* at 417-18. Such laws are analyzed for overbreadth:

> " 'When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." ' *Ibid.*

"The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:

> " 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to Article I, Section 8.' *Id.* at 417."

(Emphases, brackets, and ellipsis in original; footnote omitted.)

Our first task, then, is to determine whether the various statutes under consideration here are "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Robertson*, 293 Or at 412. As this court observed in *Robertson*, if a law by its terms restrains the free expression of opinion or restricts the right to speak freely on any subject, it violates Article I, section 8.

## A. *Gift receipt restrictions*

■ ORS 244.025(1) provides that a public official "may not * * * receive" a gift or gifts exceeding $50 in value from a lobbyist. ORS 244.025(4)(a) prohibits a public official from receiving from a lobbyist payment of expenses for entertainment in any amount. ORS 244.042(1) and (2) prohibit a public official, a candidate for public office, or a member of the official's or candidate's household from receiving from a lobbyist honoraria with a value in excess of $50. For brevity's sake, we refer to those statutory limitations as restrictions on the receipt of gifts.

Plaintiffs assert that the statutory restrictions on receiving gifts proscribe constitutionally protected expression. They argue that gifts, entertainment, and honoraria expenditures constitute "lobbying" as defined by ORS 171.725(8),[7] in that "lobbying expenditures for meals, entertainment, and honoraria convey a general message of interest and appreciation in discussing legislative or administrative issues." Plaintiffs contend that this court previously has declared that lobbying is political speech protected under Article I, section 8. *See Fidanque v. Oregon Govt. Standards and Practices*, 328 Or 1, 8, 969 P2d 376 (1998) (discussing principle). Plaintiffs argue that, in this context, giving gifts constitutes lobbying because the gifts are "clearly designed to attempt to influence legislative action or, at a minimum, to attempt to 'obtain the good will' of a legislative official." Plaintiffs also assert that, because the statutes are directed at gifts made by persons with a "legislative or administrative interest," and because the receipt of gifts is restricted only if there is some political advocacy associated with the expenditure, the statutes are directed at the content of this form of expression. Therefore, plaintiffs argue, the gift receipt restrictions fall under the first category of the *Robertson* framework. We turn to the merits of that claim.[8]

---

[7] ORS 171.725(8) provides:

"'Lobbying' means influencing, or attempting to influence, legislative action through oral or written communication with legislative officials, solicitation of executive officials or other persons to influence or attempt to influence legislative action or attempting to obtain the goodwill of legislative officials."

[8] Although the statutory list of gift recipients does not include plaintiffs, we conclude that plaintiffs are affected by the statutory restrictions within the

As noted above, the statutory restrictions regulate a particular kind of conduct: the receipt of specified gifts. "Receive" means "to take possession or delivery of (a gift) * * *." *Webster's Third New Int'l Dictionary* 1894 (unabridged ed 2002). The statutory restrictions are thus confined to the act of a public official, a candidate, or a relative or member of their household, in taking possession or delivery of a gift valued in excess of statutory limits.

The statutory restrictions on the receipt of gifts contain five elements. First, the required time frame: the gift or gifts must be received within one calendar year. Second, the receiving party must fall in one of the four groups: (1) a public official; (2) a candidate for public office; (3) a relative of one of the foregoing persons;[9] or (4) a household member of one of the foregoing persons. Third, the party must receive a gift or gifts, that is, take possession or delivery. Fourth, the gift or gifts must have an aggregate value in excess of statutory limits. Fifth, the gift or gifts (but not honoraria) must come from a source of the kind identified by ORS 244.025(1):

> "[A]ny single source that could reasonably be known to have a legislative or administrative interest in any governmental agency in which the public official holds, or the candidate if elected would hold, any official position or over which the public official exercises, or the candidate if elected would exercise, any authority."

Honoraria must be received in connection with the official duties of either the public official or the public office for which the receiver is a candidate.

In our view, the receipt of gifts restrictions are not written in terms directed to the substance of any opinion or any subject of communication, as *Robertson* explained that

meaning of ORS 28.020. If the restrictions on the receipt of gifts are enforceable, they will have a practical impact on the manner in which plaintiffs conduct their lobbying business. In that event, the restrictions on gift giving would compel plaintiffs either to restrict their present goodwill-building activities to gift giving that meets the statutory monetary limits or to eliminate gift giving altogether. Because the asserted effects of the receipt of gifts restrictions on plaintiffs' lobbying business are neither hypothetical nor abstract, plaintiffs may seek a declaration concerning the validity of those restrictions.

[9] As already noted, the restrictions in ORS 244.042(1) and (2) concerning honoraria do not apply to "relatives" of public officials or candidates for office.

analytical principle. A public official who is subject to restrictions on the receipt of gifts can violate the restrictions without saying a word, without engaging in expressive conduct, and regardless of any opinion that he or she might hold. In *Plowman*, this court considered and rejected a similar free-speech challenge to a hate crime statute, stating:

> "Persons can commit that crime without speaking a word, and holding no opinion other than their perception of the victim's characteristics."

314 Or at 165. Because the receipt of gifts restrictions do not focus on the content of speech or writing, or on the expression of any opinion, we have no reason to analyze whether the restrictions fall within a well-established historical exception, *id.* at 163, or whether they restrain communications that are incompatible with a speaker's official role or responsibility. *See In re Lasswell*, 296 Or 121, 673 P2d 855 (1983) (discussing incompatibility exception). Neither do the receipt of gifts restrictions focus on proscribing the pursuit or accomplishment of forbidden results, nor do they prohibit expression used to accomplish those forbidden results.

Plaintiffs, however, relying on *Fidanque*, argue that the receipt of gifts by public officials is so closely bound up with lobbying communications—which they assert are a constitutionally protected form of expression—that any restriction on the receipt of lobbyists' gifts necessarily restrains the practice of lobbying itself. More specifically, plaintiffs argue that this court should recognize gift giving to legislators as a form of constitutionally protected expression because (1) the act of gift giving typically is surrounded by communications about legislative business that constitute protected expression; (2) the motive behind gift giving to legislative officials is the desire to influence governmental decisions, which reflects a key reason why the constitution's framers chose to protect expression in the constitution; and (3) any constitutional protection for political contributions should apply equally to gifts to legislative officials because they are indistinguishable from political contributions. We address each of plaintiffs' arguments, beginning with a discussion of this court's *Fidanque* decision.

In *Fidanque*, two lobbyists challenged the validity of a statute that required all lobbyists to pay a biennial registration fee to the government to engage in lobbying. They contended, among other things, that the registration fee interfered with their free expression rights protected by Article I, section 8. This court recognized in *Fidanque* that lobbying was a profession that was "essentially expressive [in] nature," 328 Or at 8, and that lobbying constituted "political speech." *Id.* at 7. The registration fee examined in *Fidanque* thus was a barrier to political expression by lobbyists. *Id.* at 9. However, in striking down the registration fee, this court did not express or imply that public officials or others are entitled to take delivery of property or other largess, free of regulation, simply because lobbyists proffer it in connection with a political communication. Nor did *Fidanque* express or imply that those who listen to and interact with lobbyists—public officials and candidates for office, for example—have a constitutional free expression right to receive gifts of property, free of governmental regulation.

Although *Fidanque* properly recognized that lobbying the legislature is "primarily expressive," *id.* at 7, that case does not aid plaintiffs here, because it did not examine specific types of lobbying activities to determine whether they involved constitutionally protected expression and, to the extent they involve expression, whether they are subject to legislative regulation.

This court, however, has previously analyzed (1) whether regulated conduct should be categorized as protected expression because other free speech activity surrounds or accompanies the regulated conduct, and (2) whether the actor's motive to express a viewpoint can require the court to treat regulated conduct as protected expression. In *Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 857 P2d 101 (1993), the plaintiff, a logging company, brought a tort action for trespass to chattels against six persons who had participated in a demonstration against logging on a forest road. During the demonstration, the defendants, without permission, climbed on, and chained themselves to, several pieces of the plaintiff's logging equipment. While chained, the defendants made statements, sang songs, and chanted slogans to express their views about the

environment. Following a jury trial, the trial court entered a judgment for compensatory and punitive damages against the defendants, and the Court of Appeals affirmed the judgment. *Huffman and Wright Logging Co. v. Wade*, 109 Or App 37, 817 P2d 1334 (1991).

On review, the plaintiffs challenged the punitive damages award on free expression grounds. After describing the defendants' trespassory actions, this court stated:

> "Although those acts undoubtedly had a communicative effect, in the sense that most purposive human activity communicates something about the frame of mind of the actor, the acts were conduct, not speech. The question becomes, then, whether defendants are nonetheless constitutionally immune from potential responsibility for punitive damages because of the message that their conduct assertedly was trying to convey, the reason for their conduct, or the fact that speech accompanied their conduct."

317 Or at 449-50 (footnote omitted).

The court then turned to an analysis of other Oregon cases examining both criminal and civil laws, including the common law of torts, to determine their rationales for permitting or prohibiting punishment of conduct associated with expression.[10] The court noted that *Plowman* contained two lessons, both of which are pertinent to this case:

> "The first is that a person's *reason for engaging in punishable conduct* does not transform conduct into expression under Article I, section 8. The second lesson is that *speech accompanying punishable conduct* does not transform conduct into expression under Article I, section 8."

317 Or at 452 (emphasis in original; citations omitted).

In *Huffman*, the court also observed that it had established the analytical line between successful and unsuccessful constitutional challenges to various forms of regulation of conduct by focusing on whether speech was an element of the regulation or the cause of the claimed damage. On the one hand, the court had nullified punitive damages

---

[10] The court analyzed cases involving both criminal and civil laws together, because "[t]he same analytic construct applies under Article I, section 8, to laws that regulate but do not criminalize speech." *Id.* at 450 n 6.

awards in cases in which speech was an element of the tort at issue, *see Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979) (defamation), or the defendant had committed the tort only by speech, *see Hall v. The May Dept. Stores*, 292 Or 131, 637 P2d 126 (1981) (claim for intentional infliction of severe emotional distress was based solely on store security officer's statements during employee interrogation). On the other hand, the court had concluded that, in tort cases involving harm caused only in part by speech, "a defendant who requests it is entitled to an instruction limiting the tortious predicate for punitive damages to conduct not protected by the free speech provision of Article I, section 8." 317 Or at 457. *See, e.g., Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987) (illustrating principle).

The *Huffman* court then turned to an application of those principles to the tort of trespass to chattels involved in that case. The court determined that the jury had been entitled to find that the defendants' trespassory activities, such as chaining themselves to the plaintiff's equipment,

"caused the disturbance of plaintiff's possession of its personal property, wholly apart from any motivating opinion, underlying message, or accompanying speech. The trespassory acts were, therefore, 'non-expressive conduct' within the meaning of *Lewis v. Oregon Beauty Supply Co., supra.* The message that defendants sought to convey by their conduct, the reason for their conduct, and the spoken and written words accompanying their conduct did not transform defendants' conduct into speech."

317 Or at 458. The judgment for punitive damages was affirmed. *Id.* at 462.

Applying the analytical model used in *Huffman*, we conclude that the terms of the gift receipt restrictions limit nonexpressive conduct—not expression. As a general matter, the act of delivering property to a public official is nonexpressive conduct. Lobbyists may regularly convey political messages to public officials at or near the occasions of their gift giving. Lobbyists also may intend their gift giving to communicate political support or goodwill toward the recipients—as this court has observed, "most purposive human activity communicates something about the frame of mind of

the actor." *Huffman and Wright Logging Co.*, 317 Or at 450. But something more is required to elevate mere purposive human activity into protected expression. To the extent that the gift receipt restrictions interfere with gift *giving* by lobbyists, they impede only nonexpressive conduct. Moreover, the array of political expressions and communicative intentions that may surround the giving of gifts by lobbyists does not immunize the nonexpressive conduct of gift giving from legislative regulation.[11]

That brings us to plaintiffs' final argument, *viz.*, that gift giving by lobbyists to public officials is analogous to the giving of political contributions to candidates and campaigns, and that, consistent with *Vannatta v. Keisling*, 324 Or 514, 931 P2d 770 (1997) (*Vannatta I*), this court should declare that the giving of gifts to public officials, like campaign contributions, is constitutionally protected expression under Article I, section 8.

In *Vannatta I*, the plaintiffs challenged various statutory measures, adopted through the initiative process, including a mandatory limit on contributions to state political candidates and campaigns. The plaintiffs argued, among other things, that the contributions limitations violated Article I, section 8, because campaign contributions and expenditures were constitutionally protected expression under Article I, section 8.

In analyzing the plaintiffs' argument, the *Vannatta I* court first accepted a concession by the parties that campaign *expenditures* constitute protected expression. 324 Or at 520. However, with regard to campaign *contributions*, the court noted that the United States Supreme Court had held in *Buckley v. Valeo*, 424 US 1, 96 S Ct 612, 46 L Ed 2d 659 (1976), that campaign contributions were a kind of expression that was less central to the core of First Amendment expression and, thus, were subject to governmental restriction, with the constitutionality of any particular restriction being determined based on a balancing of the interests

---

[11] We note that, in challenging the restrictions on receiving gifts, plaintiffs might seek to demonstrate through specific proof that the state is seeking to apply the restrictions to their particular words or expression, but they have not done so here.

involved. *Vannatta I*, 324 Or at 521. The court described two of the reasons on which *Buckley* had relied for that conclusion:

"(i) although contributions may result in speech, that speech is by the candidate and not by the contributor; and (ii) contributions express only general support for a candidate and do not communicate the reasons for that support."

*Id.* The court in *Vannatta I* then stated:

"Neither of those assumptions appears correct to us. In our view, a contribution is protected *as an expression by the contributor*, not because the contribution eventually may be used by a candidate to express a particular message. The money may never be used to promote a form of expression by the candidate; instead, it may (for example) be used to pay campaign staff or to meet other needs not tied to a particular message. However, the contribution, in and of itself, is *the contributor's expression of support for the candidate or cause*—an act of expression that is completed by the act of giving and that depends in no way on the ultimate use to which the contribution is put."

*Id.* at 522 (emphasis in original).

Plaintiffs, relying—not unreasonably, in our view—on the preceding paragraph from *Vannatta I*, assert that *any* donation to a political figure, including a public official, that the donor intends as an expression of support is necessarily a form of expression protected by Article I, section 8. In our view, however, plaintiffs read the foregoing statements out of context. The statements on which plaintiffs rely are best understood if we clarify and explain them in light of the balance of the discussion in *Vannatta I*.

First, the court's assertion in *Vannatta I* that a political contribution is protected expression even if it never promotes any political message was made in connection with the court's disagreement with the two assumptions, noted above, on which the United States Supreme Court had relied for its ruling in *Buckley*. Second, and most important in our view, the court's rationale for the holding in *Vannatta I* that "campaign contributions" are protected speech is based on the assumption by the *Vannatta I* court that campaign contributions are so inextricably intertwined with the candidate or

the campaign's expression of its message that the two cannot be separated. In other words, the *Vannatta I* court assumed that restricting campaign contributions restricts a candidate's or a campaign's ability to communicate a political message. It is that assumption that underlies the court's determination that the statutory campaign contribution limitations at issue in *Vannatta I* violated Article I, section 8.

Because that premise—restricting campaign contributions restricts the ability to communicate political messages—is in question here, two other clarifying comments are necessary. First, the court's statement in *Vannatta I* that campaign contributions were constitutionally protected forms of expression regardless of the "ultimate use to which the contribution is put" was unnecessary to the court's holding. On further reflection, we conclude that that observation was too broad and must be withdrawn. Second, because *Vannatta I* assumed a symbiotic relationship between the making of contributions and the candidate's or campaign's ability to communicate a political message, this court did not squarely decide in *Vannatta I* that, in every case, the delivery to a public official, a candidate, or a campaign of money or something of value also is constitutionally protected expression as a matter of law.

The foregoing discussion undermines plaintiffs' reliance on *Vannatta I*. Giving a gift to a public official is not inextricably linked with a public official's ability to carry out official functions. Public officials can speak whether or not lobbyists have given them gifts, which distinguishes this case from *Vannatta I* and its focus on the connection between the restriction on campaign contributions and the candidate's or campaign's ability to communicate a political message. We agree with the state that the restrictions on receiving gifts withstand plaintiffs' constitutional challenge because the lobbying activity on which plaintiffs based their challenge—giving gifts to public officials—is nonexpressive conduct. That determination is consistent with this court's analysis and conclusion in *Huffman and Wright Logging Co.*, and is correct, at least in the absence of facts (which plaintiffs do not offer here) demonstrating that the state's enforcement of the restrictions has the effect of suppressing or restricting expression in a specific case. We conclude, therefore, that the

trial court correctly determined that plaintiffs' challenges to the gift receipt restrictions were not well taken, and that the court therefore correctly granted summary judgment in favor of the state.

## B. *Restrictions on offering gifts*

■ ORS 244.025(2) and (3) prohibit a lobbyist from "offer[ing]" to a public official or candidate for public office (or their relatives or household members) any gift or gifts with an aggregate value in excess of $50. ORS 244.025(4)(b) and (c) prohibit a lobbyist from "offer[ing]" to a public official or candidate for public office *any* gift of payment of expenses for entertainment.[12]

We recognize that the same statutes that restrict plaintiffs' right to communicate an offer of a gift that exceeds the statutory limitations also prohibit the public official from *accepting* the offered gift. As we have discussed earlier, the statutory restrictions on a public official's ability to accept specified gifts from lobbyists are constitutionally valid. In that light, it can be argued that, if the statutory restrictions on the receipt of gifts are constitutionally permissible, there is no need to analyze the statutory restriction on offering a gift: any claimed right to offer a gift to a public official is essentially rendered nugatory, if a public official cannot accept it. However, the restrictions on "receiving" a gift and "offering" a gift apply to different kinds of conduct and they deserve a separate constitutional analysis. In our view, the legal validity of restrictions on "receiving" gifts does not resolve the question whether plaintiffs enjoy a constitutional free expression right to communicate an "offer" of a gift.

Unlike the statutory restriction on the receipt of gifts (including by implication a restriction on the giving of gifts), the restrictions on "offering" gifts, when examined under the *Robertson* methodology, are a type of law that focuses on the content of speaking or writing: *offering* a gift. The restrictions on offering a gift are not aimed at the pursuit

---

[12] The record below demonstrates that plaintiffs wish to "offer" gifts to public officials, candidates for public office, and their relatives and household members that would exceed the restrictions described above. As a consequence, plaintiffs are "affected" by those restrictions and they may seek declaratory relief from their enforcement under ORS 28.020.

or accomplishment of some forbidden results, such as, perhaps, the regulation of conflicts of interest involving government officials. Rather, they focus on every utterance of an offer, of the kind described in the statute, whether or not such an offer produces any invidious effect. *See City of Portland v. Tidyman*, 306 Or 174, 183-84, 759 P2d 242 (1988) (city ordinance prohibiting "adult bookstores" was addressed to one disfavored type of communication by words and pictures; ordinance was not written in terms of asserted negative effects of adult bookstores). The trial court correctly determined, insofar as the restrictions on offering gifts are concerned, that those restrictions expressly regulate speech by lobbyists.

> "[A]rticle I, section 8 prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * It means that laws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end."

*Robertson,* 293 Or at 416-17. Applying that standard here, we also conclude that the restrictions on "offering" gifts do not focus on the pursuit or accomplishment of forbidden results.

The state next contends that the restrictions on offering gifts qualify as permissible reasonable limitations on the time, place, and manner of expression that leave open ample avenues for engaging in the proscribed expression. We disagree.

In *Tidyman*, this court stated:

> "A regulation is not always unconstitutional because it restricts one's choice of a place or time for self-expression or religious practice, when that is not the object of the regulation."

306 Or at 182. *Tidyman* explained several ways in which a city permissibly could limit "all location, time, manner, intensity, or invasive effect of some communicative activity * * * [or impose] limitations of number, frequency, density, or duration" of communication. *Id.* at 183. The court listed, as

examples, the granting of evenhanded exceptions to otherwise valid restrictions on the placement of signs, the flow of traffic during a demonstration, and the use of sound trucks during a campaign. But, as noted, those examples did not assist the city there, because its ordinance was drafted to prohibit one kind of disfavored speech, *i.e.,* adult bookstores.

*Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 132 P3d 5 (2006), elaborated on the holding in *Tidyman*, explaining that, although content-neutral time, place, and manner restrictions on speech can be sustained, that category of regulations concerns laws that

> "focus on the accomplishment of 'forbidden results,' but do so by restricting expression, [and therefore] such restrictions appear to come within the second of the three *Robertson* categories."

*Id.* at 288. As noted, the "second *Robertson* category" refers to laws that prohibit expression used to achieve prohibited effects. The restrictions on the offering of gifts, as noted, do not fall within the second *Robertson* category, because they expressly prohibit disfavored speech without referring at all to prohibited effects that the legislature may proscribe. The restrictions on offering gifts also do not qualify as limitations on the time, place, and manner of speech. The restrictions apply to every offer of a gift that meets the statutory criteria, regardless of when, where, and in what manner it is made.

For the foregoing reasons, we conclude that the statutory restrictions on "offer[ing]" a gift to a public official, candidate for public office, or relative or household member impermissibly restrict the right of free expression protected by Article I, section 8.[13] With respect to that statutory restriction, the trial court erred in granting summary judgment in favor of the state. Instead, the trial court should have entered a declaratory judgment in plaintiffs' favor, with respect to the restriction on "offer[ing]" gifts.

---

[13] As a result of our constitutional analysis regarding the statutory restrictions on receiving a gift, we perceive no need or utility in determining whether the restriction on offering a gift falls within a well-established historical exception.

## C. *Solicitation restrictions*

█     ORS 244.025(1) is a restriction on what a public official may do. It prohibits a public official from "solicit[ing]" a gift or gifts in excess of $50 in value from a lobbyist. ORS 244.025(4)(a) further prohibits a public official from soliciting from a lobbyist any gift in any amount for payment of expenses for entertainment. ORS 244.042(1) and (2) prohibit a public official, including a candidate for public office or a member of their household, from soliciting honoraria with a value in excess of $50.[14]

The state concedes that "soliciting" a gift or honorarium from a lobbyist is protected expression. It nonetheless argues, however, that, for other reasons, the statutory restraint on speech represented by the solicitation restrictions is a permissible one. In our view, however, we need not consider the state's concession unless we first determine whether plaintiffs are statutorily qualified to seek declaratory relief regarding the solicitation restrictions described above. ORS 28.020 provides that a person "whose rights, status or other legal relations are *affected* by a constitution [or] statute * * * may have determined any question of construction or validity arising under any such * * * constitution [or] statute * * * and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis added.)

In *Gruber v. Lincoln Hospital District*, 285 Or 3, 7, 588 P2d 1281 (1979), this court stated that plaintiffs seeking declaratory relief under ORS chapter 28 and ORS 20.020 must show how their

" 'rights, status, or other legal relations are affected' by an instrument or enactment, the construction or validity of

---

[14] ORS 244.020(6) provides:

" 'Honorarium' means a payment or something of economic value given to a public official in exchange for services upon which custom or propriety prevents the setting of a price. Services include, but are not limited to, speeches or other services rendered in connection with an event."

The statutory restrictions on soliciting or receiving gifts in ORS 244.025 (1) and (4)(a) apply to a "relative" of a public official or candidate for public office. However, the statutory restrictions on receiving honoraria in ORS 244.042(1) and (2) do not mention "relatives" and, thus, do not apply to relatives of public officials or candidates for public office, unless the relative also is a public official, candidate for public office, or member of a public official's household.

which [the plaintiff] seeks to have determined. Standing under this section has been denied when the showing of the required effect has been too speculative or entirely missing."

(Citations omitted.)

Determining whether plaintiffs have standing to seek declaratory relief in this proceeding is a question of legislative intent:

"When it is ruling on a standing issue, a reviewing court must focus on the wording of the particular statute at issue, because standing is not a matter of common law but is, instead, conferred by the legislature."

*Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996) (citations omitted).

Accordingly, to determine whether plaintiffs satisfy the statutory requirements in ORS 28.020, we must examine the factual record to determine how the challenged solicitation restrictions affect plaintiffs' legal interests. Here, plaintiffs assert that they desire to bestow gifts on public officials, candidates for public office, and relatives and members of their households in connection with lobbying activities. However, plaintiffs have made no showing on the record in this case that the solicitation restrictions affect them at all. Plaintiffs are not among the persons to whom the solicitation restrictions apply, *viz.*, a public official, a candidate for public office, or a relative or member of the household of a public official or candidate.[15] Moreover, nothing that plaintiffs allege permits the implication that the solicitation restrictions have had or will have a practical effect on plaintiffs' lobbying and business activities. Plaintiffs do not explain how the statutory restrictions on the ability of public officials to

---

[15] We have recognized that the legislature has constitutional authority to confer standing on "any party" in an agency proceeding to seek judicial review of the agency's final order without a further showing of interest. *Marbet v. Portland Gen. Elect.*, 277 Or 447, 453, 561 P2d 154 (1977). No such conferral has occurred here. We also have recognized that the legislature may deputize its citizens to challenge governmental action in the public interest, even though the particular plaintiff may have no personal stake in the proceeding. *Kellas v. Dept. of Corrections*, 341 Or 471, 484, 145 P3d 139 (2006). In contrast to the statute reviewed in *Kellas*, no statute deputizes the entire public, or any smaller group that might include plaintiffs, to challenge the solicitation restrictions at issue here.

solicit from lobbyists gifts, entertainment expenses, or honoraria creates or imposes any limitation on plaintiffs' ability to communicate freely with public officials, either in plaintiffs' individual capacities or as representatives of their clients.

Based on the foregoing, we conclude that plaintiffs do not qualify under ORS 20.080 as parties "affected" by the solicitation restrictions. They therefore are not entitled to seek declaratory relief from those restrictions. Plaintiffs are not entitled to an adjudication of the constitutionality of the solicitation restrictions in ORS 244.025(1) and (4)(a) and ORS 244.042(1) and (2). The trial court should have dismissed plaintiffs' complaint with respect to that claim.

### D. *First Amendment: Classification of speakers*

Plaintiffs also challenge the gift and entertainment restrictions under the First Amendment to the United States Constitution. Their theory is that the gift and entertainment restrictions apply unevenly, and therefore unconstitutionally, because they suppress the federal speech rights of lobbyists (*i.e.,* persons with a legislative or administrative interest) but not others.

We have already concluded that the receipt of gift and entertainment restrictions do not abridge the right of free expression under Oregon's Constitution because, as a general matter, they regulate nonexpressive conduct, not expression. Plaintiffs fail to demonstrate that the United States Supreme Court would construe and apply the First Amendment to those restrictions, and yet reach a different conclusion under federal law. We are not aware of any pertinent federal authority that would compel a different answer. Because plaintiffs have not established that the gift and entertainment restrictions deny a First Amendment right, their contentions regarding the alleged discriminatory application of those restrictions to different classifications of persons are unavailing.

### II.   ARTICLE I, SECTION 26

Finally, plaintiffs assert that the statutory gift, entertainment, and honoraria restrictions violate Article I, section 26, of the Oregon Constitution, which provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances (sic)."

Plaintiffs assert that, "by prohibiting * * * expenditures to inform or persuade legislators regarding legislative matters, the lobbying restrictions impermissibly restrain Oregon inhabitants from 'instructing their Representatives' or 'applying to the Legislature for redress of' grievances.'" However, plaintiffs have failed to support their assertions with any case law, or with any analysis of the origins, the historic concerns, or the drafters' political theories that underlie Article I, section 26. *See State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) (without extensive briefing on the origins, historic concerns, and political theories underlying federal Guarantee Clause, court would not consider full range of arguments that could be made regarding impact of Guarantee Clause on constitutionality of death penalty statute). In the absence of that kind of extensive and focused analysis in this case, we fail to see how the rights to assemble, to instruct representatives, and to apply to the legislature for redress of grievances, as protected by Article I, section 26, necessarily must include a constitutional right for public officials to receive gifts, entertainment, and honoraria, or for lobbyists to give restricted gifts to public officials. The fact that gifts may be "helpful" in creating goodwill with public officials does not mean that Article I, section 26, protects the delivery of gifts to them.

## III. CONCLUSION

We summarize our conclusions as follows. The trial court correctly granted summary judgment to the state on plaintiffs' challenges to the receipt of gifts and payment of expenses for entertainment restrictions under Article I, sections 8 and 26, of the Oregon Constitution and the First Amendment to the United States Constitution. However, the trial court erred in granting summary judgment to the state in respect to plaintiffs' challenges to the restrictions on "offer[ing]" gifts and entertainment under Article I, section 8. The trial court correctly granted summary judgment to the

state on plaintiffs' challenges to the solicitation of gifts restrictions, because plaintiffs do not qualify as persons affected by those restrictions under ORS 28.020. Plaintiffs are entitled to a declaratory judgment that the restrictions on offering gifts and entertainment violate plaintiffs' free speech right under Article I, section 8.

The order of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.