POWERS, J.
*448 Plaintiff Western Radio Services appeals from a limited judgment dismissing its action against defendants Verizon Wireless and Midstate Electric Cooperative, Inc., assigning error to the trial court's granting of defendants' motion for summary judgment. We review the trial court's ruling for whether there are genuine issues of material fact that preclude summary judgment and whether the trial court correctly ruled that defendants are entitled to judgment as a matter of law. ORCP 47 C. We conclude that the trial court did not err in its rulings. We further conclude, however, that the trial court's dismissal of plaintiff's declaratory judgment claims was not the proper disposition and that the judgment must be vacated and remanded for entry of judgment that includes a declaration of the rights of the parties. Bell v. City of Hood River , 283 Or. App. 13, 20, 388 P.3d 1128 (2016)
The relevant facts are undisputed. Defendant Midstate is a private, nonprofit electric cooperative that provides electricity to its members in an "exclusively serviced territory." Plaintiff is a wireless telecommunications carrier and is a member of Midstate.
Under ORS 758.450, a utility service may apply with the Public Utility Commission (PUC) for the allocation of exclusively serviced territory. ORS 758.450(1) ; see also ORS 758.735 (describing application process). If the PUC approves an application, no other person may offer, construct, or extend utility service in or into the allocated territory. ORS 758.450(2).
In 1962, the PUC approved Midstate's application for allocation of an exclusively serviced territory in Deschutes, Klamath, Lake, and Lane Counties. The United States Forest *220 Service (USFS) owns land within Midstate's exclusively serviced territory, including the land known as Sugar Pine Butte, which is on the east side of Highway 97 outside of Sunriver, Oregon, and northwest of Paulina Lake and East Lake.
In 1989, plaintiff became a Midstate member and agreed to be bound by Midstate's policies, including those *449 that "may be adopted from time to time." Among Midstate's policies is a "Line Extension Policy" adopted in 1990 providing that a line extension is "[a]ny proposed branch or continuation of a [Midstate] distribution line" within Midstate's service area. Under Midstate's line extension policy, a customer requesting a line extension must bear the costs of extending the line.
In April 1990, plaintiff obtained a special use permit from USFS to build a 60-foot radio tower and equipment building at Sugar Pine Butte. Initially, plaintiff's tower was solar and battery powered.
In 1992, plaintiff asked Midstate to provide power to plaintiff's radio tower on Sugar Pine Butte, which would involve extending a buried cable approximately 100 miles from Midstate's existing power distribution line on Highway 97. Midstate estimated that the cost for construction of the requested line extension would be $137,865. Midstate agreed to expand its power distribution infrastructure through a buried power line if plaintiff agreed to provide trenching, obtain some permitting, and pay the remaining costs as "contribution in aid of construction."
Plaintiff agreed to provide trenching and to obtain permitting, for which Midstate credited plaintiff $60,337 against its contribution in aid of construction. In a January 1992 letter, Midstate offered plaintiff two options for payment of plaintiff's remaining "contribution in aid of construction": Option One was a financing option and Option Two required full up-front payment. More specifically, Option One required an initial payment of $38,760 and annual payments of $4,845 for 10 years, for a total cost to plaintiff of $87,210. Option One would have required plaintiff to execute an "Electric Service Agreement" that included the statement that "Western agrees to pay for the cost of such installation of electrical line and facilities on Midstate's system which shall at all times be owned by Midstate[.]"[1] Option *450 Two required full up-front payment of plaintiff's "contribution in aid of construction" of $74,639 and no financing or contract.
Plaintiff chose Option Two and signed a "letter of agreement" that described the terms. Unlike the Electric Service Agreement, the letter made no mention of ownership of the electrical line and facilities. Midstate obtained a special use permit from USFS to construct, reconstruct, maintain, and operate power lines on USFS's Sugar Pine Butte site, as well as a nontransferable right to distribute power. Midstate's USFS permit provided that it would expire if Midstate ceased to be the owner of the equipment, including power lines.
In 2004, plaintiff entered into an agreement to lease space on its tower to Verizon's predecessor, RRC Holdings, Inc., allowing RRC Holdings to place four antenna panels on the tower and use space in the building for equipment. The lease expired on December 31, 2013. Plaintiff's USFS special use permit also expired on that date and was not renewed.
In response to the nonrenewal of its USFS lease, plaintiff sued the USFS in federal court, and the USFS filed a counterclaim for trespass. As a result of that litigation, the USFS obtained a judgment that included a permanent injunction prohibiting plaintiff from operating its equipment on USFS lands. Plaintiff was found liable for intentional trespass and ordered to remove all of its property from USFS lands, including the tower, building, and radio equipment. Plaintiff *221 did not remove its property, which now belongs to the federal government.
After the judgment, Midstate disconnected plaintiff's access to power from the tower but continued to provide power to Verizon. Plaintiff then brought this action for trespass, alleging that it owned the power line connecting Midstate's power distribution line on Highway 97 to Sugar Pine Butte and that Midstate had improperly entered into a lease agreement with Verizon for connection to power *451 through that line, and seeking damages and an injunction. Plaintiff also sought a declaration voiding existing contracts and preventing Midstate from entering into an agreement with Verizon.
Plaintiff's claims are predicated on its assertion that, by virtue of its letter agreement with Midstate, and oral promises made by Midstate's general manager, plaintiff owns the buried cable to Sugar Pine Butte. Midstate sought summary judgment, contending that plaintiff has no ownership interest in the power line and that, under Oregon law and Midstate's and USFS's policies, plaintiff could not own the power line.
The trial court agreed with Midstate that there was no evidence that plaintiff owns the power line, and that the summary judgment record required the conclusion that Midstate owns the equipment and has exclusive authority to operate and maintain it. Accordingly, the court granted defendants' motion for summary judgment.
On appeal, plaintiff maintains that the trial court erred in granting defendants' motion. As a preliminary matter, we note that, as defendants correctly point out (and plaintiff acknowledges on appeal), the record could not support a claim for "trespass," which is an invasion of an interest in the exclusive possession of land. See Goodwin v. Kingsmen Plastering, Inc. , 359 Or. 694, 701-02, 375 P.3d 463 (2016) (so stating); Martin v. Reynolds Metals Co. , 221 Or. 86, 90, 342 P.2d 790 (1959) (noting trespass and nuisance are separate fields of tort liability relating to interference "with the possession of land"). Rather, the only plausible claim under the pleaded facts would be for "trespass to chattels" or conversion, depending on the level of interference or disturbance. See Morrow v. First Interstate Bank , 118 Or. App. 164, 168, 847 P.2d 411 (1993) (describing distinction between trespass to chattels and conversion). To establish a claim for trespass to chattels or conversion, a party must show an actual ownership interest in and the right to control the disputed property. Mustola v. Toddy , 253 Or. 658, 663, 456 P.2d 1004 (1969) (adopting the definition of conversion found in Restatement (Second) of Torts § 222A(1) (1965) ).
*452 In their motion for summary judgment, defendants contended that there was no viable claim, because plaintiff does not own the power line. As the party opposing defendants' motion, plaintiff had the burden to produce evidence of ownership of the power line that could support a claim of trespass to chattel or conversion. ORCP 47 C; Two Two v. Fujitec America , Inc. , 355 Or. 319, 324, 325 P.3d 707 (2014). We agree with the trial court that plaintiff did not meet that burden.
The only evidence in the record on summary judgment concerning plaintiff's asserted ownership of the power line is a statement in an affidavit of plaintiff's president, Overdorfer:
"[Midstate's general manager] provided me with two options as to how Western could handle the cost of building the line for [Midstate] to provide electrical service: (1) Midstate would finance part of the costs and would require [plaintiff] to agree to a certain minimum power consumption and [plaintiff] would have to agree that Midstate could connect other parties to the line and would own the physical line; or (2) [plaintiff] could pay for all the costs and materials, which would be [plaintiff's], and no contract would be required and it was clear that Midstate would not be able to connect other parties to the line with [sic ] [plaintiff's] approval."
Plaintiff argues that, "[i]n its essence, this is a contract case." In plaintiff's view, Overdorfer's affidavit is evidence that gives rise to a question of fact as to whether the parties agreed that plaintiff would own the equipment. The problem with plaintiff's argument, however, is that Overdorfer's affidavit does not actually state that the parties agreed *222 that, under Option Two, plaintiff would have owned the buried power line. And there is no other evidence in this record that would support an inference that the parties intended that plaintiff's selection of Option Two gave plaintiff an ownership interest in the buried power line.[2]
But, even viewing the affidavit in the light most favorable to plaintiff, *453 Woodroffe v. State of Oregon , 292 Or. App. 21, 24, 422 P.3d 381 (2018) (evidence in summary judgment record must be viewed in light most favorable to nonmoving party), and assuming the truth of Overdorfer's understanding that Option Two gave plaintiff ownership of the power line, which then may call into question what the parties intended, Overdorfer's characterization of the agreement still would not create an issue of fact as to whether plaintiff actually owns the power line given the evidence in the summary judgment record. That is because, even assuming the truth of Overdorfer's understanding of the agreement, the evidence in the entire summary judgment record failed to establish that an objectively reasonable juror could return a verdict concluding that plaintiff owned the power line. First, Overdorfer's understanding does nothing to explain that Midstate would have agreed to terms that would have violated its own permit with the USFS for the extension of service, which provided that if Midstate transferred any of the equipment, its permit would be cancelled. Second, Oregon law heavily regulates the permitting of power distribution. See ORS chapters 756, 757, 758. Plaintiff's ownership of the power line would have made it a "public utility," as defined in ORS 757.005 (1)(a)(A) (defining a public utility as "[a]ny corporation *** that owns, operates, manages or controls all or a part of any plant or equipment *** for the delivery *** of *** power, directly or indirectly to or for the public"), within Midstate's "exclusively service territory" and in violation of ORS 758.450, and would have subjected plaintiff to regulation by the PUC. It is difficult to conceive how an objectively reasonable juror could find that the parties could have intended an agreement that would have such a consequence.
Viewing the summary judgment record as a whole and in the regulatory context of utility service, we conclude that Overdorfer's understanding of the parties' agreement does not give rise to a material issue of fact as to whether plaintiff actually owned the power line through which Midstate distributed power to Sugar Pine Butte. Accordingly, we conclude that the trial court did not err in granting defendants' motion for summary judgment on plaintiff's claim for "trespass."
*454 In view of our conclusion with respect to the trespass claim, we agree with defendants that plaintiff has not established a basis for seeking declaratory relief. Finally, because the trial court incorrectly dismissed plaintiff's declaratory judgment claims, we vacate the judgment and remand for entry of a judgment that includes a declaration of the parties' rights that is consistent with this opinion. See, e.g. , Schroeder v. Clackamas County Bank , 291 Or. App. 16, 18, 419 P.3d 726, rev. den. , 363 Or. 815, 431 P.3d 90 (2018) ("[B]ecause it is error to dismiss a claim for declaratory relief unless there is no justiciable controversy, we remand for the issuance of a judgment that declares the rights of the parties.") (footnote and citation omitted).
Vacated and remanded.

The agreement also provided:
"To enable Midstate to provide the equipment and facilities requested by Western pursuant to this Agreement, Western agrees to pay the sum of [$38,760] as contribution in aid of construction on account of the equipment and facilities described in Exhibit A hereto upon execution hereof. No refund shall be made to Western of any portion of the contribution in aid of construction and all improvements as described in Exhibit A to Midstate's distribution system and any related equipment shall remain and become the sole and exclusive property of Midstate."

We reject plaintiff's contention that the absence, in the letter of agreement, of a statement that Midstate would own the power line permits an inference that plaintiff owned the power line.