Argued and submitted December 20, 2018, vacated and remanded for entry of judgment declaring rights of the parties June 24, 2020

Marquis COUEY,
an individual,
*Plaintiff-Appellant,*

*v.*

Bev CLARNO,
Secretary of State of the State of Oregon,
*Defendant-Respondent.*

Marion County Circuit Court
10C14484; A164807

469 P3d 790

Plaintiff appeals from a judgment dismissing his complaint against the Secretary of State seeking a declaration that ORS 250.048(10), under which a person "may not obtain signatures on a petition or prospective petition for which the person is being paid and, at the same time, obtain signatures on a petition or prospective petition for which the person is not being paid," is facially unconstitutional as a restriction on the free speech and free assembly provisions in violation of Article I, sections 8 and 26, of the Oregon Constitution. *Held*: ORS 250.048(10) restricts conduct, not expression, and therefore is not subject to a challenge for facial invalidity under the Oregon Constitution, Article I, sections 8 and 26. If, however, the statute is interpreted to implicate expression, then it is a reasonable content-neutral time, place, and manner restriction on volunteer signature gathering that is based on a legitimate state interest. For those reasons, the trial court did not err in rejecting plaintiff's challenge that ORS 250.048(10) is unconstitutional under Article I, sections 8 and 26. However, because the trial court incorrectly dismissed the action instead of issuing a judgment that declares the rights of the parties, the case is vacated and remanded for entry of an appropriate judgment declaring the rights of the parties.

Vacated and remanded for entry of judgment declaring rights of the parties.

Claudia M. Burton, Judge.

Linda K. Williams argued the cause for appellant. Also on the briefs was Daniel W. Meek.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Vacated and remanded for entry of judgment declaring rights of the parties.

_____

* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

In this declaratory judgment action, we address whether the restriction on paid circulators from simultaneously collecting signatures on a volunteer basis can withstand plaintiff's constitutional challenge based on the free speech and free assembly provisions of the Oregon Constitution. More specifically, plaintiff appeals from a judgment dismissing his complaint against the Secretary of State seeking a declaration that ORS 250.048(10),[1] under which a person "may not obtain signatures on a petition or prospective petition for which the person is being paid and, at the same time, obtain signatures on a petition or prospective petition for which the person is not being paid," is facially unconstitutional as a restriction on the free speech and free assembly provisions in violation of Article I, sections 8 and 26, of the Oregon Constitution.[2] On the parties' cross-motions for summary judgment, the trial court dismissed plaintiff's claim after determining that there was no constitutional violation and that the secretary was entitled to judgment as a matter of law. We conclude that the trial court did not err in rejecting plaintiff's challenges and that the secretary is entitled to a judgment. We further conclude that the trial court's dismissal of the claim was not the proper disposition of plaintiff's declaratory judgment action, and we therefore

---

[1] ORS 250.048(10) provides:

"A person registered under this section may not obtain signatures on a petition or prospective petition for which the person is being paid and, at the same time, obtain signatures on a petition or prospective petition for which the person is not being paid. The secretary may not include any signatures obtained in violation of this subsection in a count under ORS 250.045(3) or 250.105 or ORS chapter 249 for purposes of determining whether a state initiative, referendum or recall petition or a prospective petition for a state measure to be initiated contains the required number of signatures of electors."

[2] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 26, of the Oregon Constitution provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [*sic*]."

vacate and remand the judgment so that the trial court can issue a judgment declaring the effect of Article I, sections 8 and 26 on ORS 250.048(10). *See, e.g.*, *Western Radio Services Co. v. Verizon Wireless, LLC*, 297 Or App 446, 454, 442 P3d 218, *rev den*, 365 Or 534 (2019) (explaining that the proper disposition in a declaratory judgment action is issuance of a declaration as to the rights of the parties).

The facts of this case, which is before us for a second time, are undisputed.[3] In 2010, plaintiff was a paid, registered petition circulator for two statewide initiative petitions. He wished to collect signatures on another statewide initiative petition at the same time as an unpaid volunteer. However, ORS 250.048(10) prohibits any registered petition circulator from obtaining signatures on a statewide initiative petition as a volunteer while the person is obtaining signatures on a statewide initiative as a paid circulator.[4] Plaintiff brought this action, seeking a declaration that ORS 250.048(10) is unconstitutional on its face, because it interferes with a circulator's right to expression and assembly as guaranteed by Article I, sections 8 and 26, of the Oregon Constitution. Plaintiff sought also to enjoin the secretary from enforcing the statute.

The trial court granted the secretary's motion for summary judgment after concluding that the statute's prohibition on "obtaining" signatures does not implicate speech, assembly, or any other form of expression. In the alternative,

---

[3] In *Couey v. Brown*, 257 Or App 434, 306 P3d 778 (2013), we affirmed the trial court's dismissal of plaintiff's action, determining that the claim became moot when plaintiff ceased to be a registered paid circulator who was prohibited from circulating initiative petitions at the same time as a volunteer. The Supreme Court upheld our determination that the claim was moot but remanded the case to the trial court to determine in its discretion whether the litigation should nonetheless proceed under ORS 14.175, as "capable of repetition" and "likely to evade judicial review in the future." *Couey v. Atkins*, 357 Or 460, 355 P3d 866 (2015). On remand from the Supreme Court, the trial court determined in its discretion to allow the case to proceed, and that ruling is not challenged in this appeal.

[4] Violations of the prohibition in ORS 250.048(10) are subject to significant penalties. The Secretary of State "may not include any signatures obtained in violation of this subsection in a count *** for purposes of determining whether a state initiative *** contains the required number of signatures of electors," ORS 250.048(9), and the culpable circulator could be subjected to a civil penalty, ORS 260.995.

the court further concluded that, even if speech or assembly are implicated by the statutory restriction, there is no constitutional violation, because the statute imposes reasonable and content-neutral time, place, and manner restrictions on the collection of signatures by paid circulators and those restrictions are supported by a legitimate state interest. *See State v. Babson*, 355 Or 383, 407, 326 P3d 559 (2014) (describing three-factor test for assessing whether statutory restrictions were reasonable limits on the time, place, and manner of expression).

On appeal, plaintiff contends that the trial court erred in granting the secretary's motion for summary judgment. We write to address plaintiff's first through fourth assignments of error, in which he challenges the trial court's conclusion that the prohibition in ORS 250.048(10) is not facially invalid, and we reject his remaining contentions without discussion. Whether ORS 250.048(10) is facially invalid because it restricts speech or assembly, in violation of Article I, section 8 or section 26, is a question of law that we review for legal error. *State v. Borowski*, 231 Or App 511, 516, 220 P3d 100 (2009).

ORS 250.048 is the statutory guide for paying petition circulators and for being paid to obtain signatures. The disputed subsection, ORS 250.048(10), provides that a person who is paid to obtain signatures on a petition may not at the same time voluntarily obtain signatures on a different petition.[5] In addition to that restriction, the statute sets forth the requirements for paying and being paid for obtaining signatures, including registration, ORS 250.048(1), (11), training, ORS 250.048(1)(b), the contents of an application for registration, ORS 250.048(2), exclusions from registration for those who have certain convictions or certain civil violations, ORS 250.048(4), criminal records checks, ORS 250.048(4), (5), (6), and the requirement that the registered circulator carry photo identification, ORS 250.048(8).

---

[5] The secretary's administrative rule, OAR 165-014-0285, defines "at the same time" as

"any time period for which the person is being paid to circulate any petition or prospective petition. 'At the same time' does not include any lunch or other break period for which a person is not paid to circulate any such petition, as reflected in the person's payroll records required to be submitted[.]"

As a preliminary matter, we note what is and is not challenged in this case. There is no contention here that there is a state constitutional right to use paid petition circulators or to be paid for petition circulating. *See State v. Campbell/Campf/Collins*, 265 Or 82, 94, 506 P2d 163 (1973) (rejecting challenge under Article IV, section 1, of the Oregon Constitution to *former* ORS 254.590 (1971), *renumbered as* ORS 260.565 (1981); *repealed by* Or Laws 1983, ch 756, § 13, which banned payment of initiative petition circulators and made payment of circulators a misdemeanor);[6] *Wolfe v. Brown*, 294 Or App 800, 432 P3d 1121 (2018) (addressing First Amendment challenge to pay-per-signature ban in context of administrative evidentiary ruling). The only challenge is that ORS 250.048(10) is unconstitutional on its face, because it interferes with a circulator's right to expression and assembly as guaranteed by Article I, section 8 and section 26. To address that challenge, we begin with an overview of the well-established methodology for assessing a facial challenge under Article I, section 8.

In *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982), the Supreme Court established a three-part framework for analyzing laws under Article I, section 8. The first *Robertson* category encompasses any law that is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Id.* at 412. Laws in that category are unconstitutional on their face, "unless the restriction is wholly confined within an historical exception." *Id.* The first category encompasses only statutes that expressly prohibit speech.

The second *Robertson* category also encompasses only statutes that expressly prohibit speech. A law falls within the second category if it expressly regulates speech but is directed to forbidden effects or harms of the proscribed speech and not to the substance of the communication itself. *Id.* at 415. Laws that fall within the second *Robertson*

---

[6] *Former* ORS 254.590 (1971) provided:

"No person shall give, pay or receive any money or other valuable consideration for securing signatures of electors upon any petition for the initiation of any measure or referendum on any measure or for the recall of any public officer."

category are analyzed for overbreadth and are held to be facially invalid if they are overbroad. *Id.*

The third *Robertson* category describes laws that do not expressly restrict speech but that may have the effect of prohibiting or limiting it. Laws in the third category are not facially invalid, but they are subject to as-applied challenges. *Babson*, 355 Or at 404.

Plaintiff advances a facial challenge to ORS 250.048(10); thus, to be successful, it must fall within either the first or second *Robertson* category as a law that expressly restricts expression because it is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication."

The Supreme Court recently adhered to the *Robertson* framework in *Multnomah County v. Mehrwein*, 366 Or 295, 462 P3d 706 (2020). Because the Supreme Court's opinion in *Mehrwein* and the cases on which it relied bear heavily on our analysis here, we address the opinion in some detail. At issue in *Mehrwein* was the facial validity of a Multnomah County code provision, MCC § 5.201, that limited the amount of money that a particular campaign donor could give to a candidate for election and the amount that a candidate could receive from a particular donor. *Id.* at 298. The parties' arguments centered on *Vannatta v. Keisling*, 324 Or 514, 931 P2d 770 (1997) (*Vannatta I*), in which the court had struck down limits on campaign contributions and expenditures as violating the free speech guarantee embodied by Article I, section 8. *Mehrwein*, 366 Or at 299.

The court in *Mehrwein* surveyed its caselaw relating to the first two *Robertson* categories—laws that expressly restrict speech or expression because they are "written in terms directed to the substance of any 'opinion' or any 'subject' of communication," which are subject to facial challenge—as distinct from the third *Robertson* category, which includes laws that do not expressly restrict speech but that may have the effect of prohibiting or limiting it, and which may only be challenged "as applied." *Id.* at 301. Noting the importance of that distinction—that is, laws that expressly restrict speech and those that do not—the court

began its examination with *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992).

In *Plowman*, the court addressed *former* ORS 166.165(1)(a)(A) (1991), which imposed an enhanced punishment for assault in the fourth degree when the defendant acted because of a perception about the victim's race, color, religion, national origin, or sexual orientation. The defendant in *Plowman* had yelled racial slurs while assaulting the victim. *Id.* at 160. He argued that the statute was unconstitutional under Article I, section 8, because it provided for an enhanced penalty based on his beliefs. The court in *Plowman* rejected the defendant's contention, and explained, citing *Robertson*, 293 Or at 412, that the relevant question in determining whether the statute was subject to the facial challenge was whether the statute was "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Plowman*, 314 Or at 165. The court explained that the defendant's beliefs were not targeted by the statute, which did not proscribe opinion or speech and could be violated without speaking a word. The court held that the law proscribed a forbidden effect, *viz.*, assaulting a person based on a perception of the person belonged to a particular group. *Id.*

From *Plowman*, the *Mehrwein* court drew the principle that, when a statute does not expressly restrict speech but rather focuses on a forbidden effect, and the offense can be committed without speaking, the law does not fall within the first *Robertson* category, even if there was a certainty that the law would punish some expressive conduct. *Mehrwein*, 366 Or at 303.

The *Mehrwein* court then turned to the analysis in *Babson*. In *Babson*, the defendants challenged a rule that prohibited the overnight use of the steps of the state capitol. The defendants, who had held a nighttime vigil on the capitol steps, had been charged with violating the rule, and argued that the rule restricted expression and therefore fell within one of the first two *Robertson* categories. *Babson*, 355 Or at 394. The court rejected the defendants' contention, explaining that, although the rule had the effect of prohibiting some expressive conduct, it was not written in

those terms but rather prohibited any use, including nonexpressive use, of the capitol steps during certain hours. *Id.* at 396-97. Because the rule could be violated without engaging in any expressive conduct, the *Babson* court concluded that the rule was not a *Robertson* category one law. The court further concluded that the rule was not subject to an overbreadth challenge as a *Robertson* category two law, because the terms of the rule did not include expression as an "element or 'proscribed means' of causing a targeted harm." *Id.* at 430. The court expressly rejected the contention that apparent applications to speech were sufficient to make the rule one that directly refers to speech. *Id.* at 398. Although the rule did have application to speech, the court explained that, because the rule did not expressly refer to speech as a means of causing harm, it was not subject to an overbreadth challenge within the second category of *Robertson*. *Id.* at 430.

From *Babson*, the court in *Mehrwein* drew the principle that "laws that restrict conduct that only sometimes has an expressive component—and that do not refer to the expressive component in defining the conduct that is restricted—are not laws directed at speech." 366 Or at 304.

After addressing those cases, the court in *Mehrwein* returned to the dispute in that case concerning its opinion in *Vannatta I*. Based on principles drawn from *Plowman* and *Babson*, the Supreme Court explained that the reasoning in *Vannatta I* that, because many or most campaign contributions are expressive, restrictions on campaign contributions fall into the first *Robertson* category, was erroneous. The court explained that under *Plowman* and *Babson*, "a law that is directed to conduct that is only sometimes, rather than necessarily, expressive is not subject to a facial challenge" as a law "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Mehrwein*, 366 Or at 308 (citing *Robertson*, 293 Or at 412). The court further observed that "treating a law as an express restriction of speech because many or even most of its applications restrict expression not only calls into question the results in *Plowman* and *Babson*, it also substantially expands the first *Robertson* category." *Id*. at 308.

The court went on to explain in *Mehrwein* that the reasoning in *Vannatta v. Oregon Government Ethics Comm.*, 347 Or 449, 222 P3d 1077 (2009) (*Vannatta II*), in which the court held that restrictions on receipt of campaign contributions were not within the first *Robertson* category, had involved a straightforward and correct application of the holding in *Plowman* that, if a restriction can be violated without engaging in expressive conduct, then it is not a restriction on expressive conduct. *Mehrwein*, 366 Or at 310. The court, however, disavowed the conclusion in *Vannatta II* that upheld *Vannatta I*, and reemphasized the holding of *Plowman* that a law that restricts conduct without expressly regulating speech is not a *Robertson* category one law directed toward expression, even if the law may affect a person's ability to speak. *Id.* at 313. The court summarized:

> "We conclude that both *Vannatta I* and *Vannatta II* were erroneous in reasoning that the contribution limits at issue in *Vannatta I* are *Robertson* category one laws. As a result, we also conclude that *Vannatta I* erred in holding that those laws are facially invalid on that basis."

*Id.*[7]

The same principles discussed in *Mehrwein* and applicable to a free-speech analysis under Article I, section 8, apply to a challenge under Article I, section 26, relating to the right to assemble, *viz.*, a law that does not, by its terms, restrict assembly cannot be facially challenged. *See State v. Illig-Renn*, 341 Or 228, 234, 142 P3d 62 (2006) (explaining that only laws that "expressly" or "obviously" target activities protected by Article I, sections 8 and 26, are subject to facial challenge). The court explained in *Illig-Renn*:

---

[7] That conclusion, however, did not end the inquiry. After discussing principles of *stare decisis* and its prior cases, the court concluded:

> "We disavow the reasoning in *Vannatta I* that campaign contribution limits necessarily are *Robertson* category one laws. *Vannatta I* erred in holding contribution limits unconstitutional based on that reasoning. The correct inquiry, under *Robertson*, is whether such limits are 'written in terms directed to the substance of any "opinion" or any "subject" of communication.'"

*Mehrwein*, 366 Or at 322 (quoting *Robertson*, 293 Or at 412). The court also clarified that it was not overruling all of the issues discussed in *Vannatta I*; rather, it was disavowing "only those that *** conflict with the *Robertson* framework." *Id.* at 319 n 8.

> "[T]his court has limited facial overbreadth analysis to statutes that more or less expressly identify protected speech as a statutory element of the offenses they define, *Robertson*, 293 Or at 415, or that otherwise proscribe constitutionally protected speech 'in [their] own terms,' *id*. at 417."

*Illig-Renn*, 341 Or at 235.

With that background, our initial inquiry is whether ORS 250.048(10) on its face is written in terms directed to the substance of any opinion or any subject of communication, *Mehrwein*, 366 Or at 301-13, *Robertson*, 293 Or at 412, or expressly targets speech or assembly as an "element" of a violation of the statute, *Illig-Renn*, 341 Or at 235.

We begin that analysis with the text of the disputed subsection, which provides, in part:

> "A person registered under this section may not obtain signatures on a petition or prospective petition for which the person is being paid and, at the same time, obtain signatures on a petition or prospective petition for which the person is not being paid."

ORS 250.048(10). Plaintiff contends that the subsection on its face targets speech, because to "obtain signatures" is the essence of "petitioning," which encompasses the expressive steps of solicitation, advocacy, and persuasion. Plaintiff further argues that, if obtaining signatures is not itself expression, then the statute targets conduct that "presupposes speech" and thereby violates constitutional protections.

The secretary responds that the restrictions on obtaining signatures under the statute do not, either directly or indirectly, regulate the solicitation of signatures, advocacy, or persuasion, or the substance of any opinion or any subject of communication, and that any communication that precedes or accompanies obtaining signatures does not make the nonexpressive conduct of obtaining signatures expressive.

We first consider whether the statute's text is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Robertson*, 293 Or at 412. To the extent that plaintiff contends that the statute is expressly

directed to speech or the substance of any opinion or subject of communication expressed through the process of petitioning, we reject the underlying premise of that argument that the focus of ORS 250.048(10) is, fundamentally, directed at petitioning, and therefore must be construed as expression. It is undisputed that petitioning, including the solicitation and signature gathering process, is a form of political expression. *See Stranahan v. Fred Meyer*, 331 Or 38, 63-64, 11 P3d 228 (2000) (Article IV, section 1, of the Oregon Constitution, which establishes the initiative and referendum process, confers a right to solicit signatures for initiative petitions); *see also Lloyd Corp. v. Whiffen*, 307 Or 674, 684, 773 P2d 1294 (1989) (signature-gathering process for political petitions is a form of political speech); *Leppanen v. Lane Transit Dist.*, 181 Or App 136, 145, 45 P3d 501 (2002) (seeking or soliciting signatures is "a form of speech"). The focus of ORS 250.048(10), however, is not on petitioning or signature gathering *per se*; rather, it concerns only one component of that process: the act of obtaining signatures, which is nonexpressive conduct. We will decline to give a statute a broad interpretation that results in constitutional infirmities when it is susceptible to a plausible construction that is constitutional. *See State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996) (explaining that, "when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning"). Although we do not consider plaintiff's interpretation to be implausible, as we explain below, we conclude that ORS 250.048(10) is subject to a plausible interpretation that the restriction on "obtaining signatures" regulates only the nonexpressive conduct of acquiring signatures on a form and not "petitioning" as political expression. And, even if the restriction on obtaining signatures regulates conduct that could affect a person's ability to speak freely, we conclude that it does not expressly regulate speech and therefore does not fall within the first or second *Robertson* category, and is not subject to a facial challenge.

No statute defines what it means to "obtain signatures." In the context of petition circulation, the most relevant definition of "obtain" is "to gain or attain possession

\*\*\* usu. by some planned action or method[.]" *Webster's Third New Int'l Dictionary* 1559 (unabridged ed 2002) (defining "to obtain"). The dictionary defines "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal." *Id.* at 1770. "Gaining possession" of a signature requires the circulator to: determine that the signer is a registered Oregon voter, direct the signer to a signature sheet, and witness the signer's signature. *See* ORS 250.045(10)(a) - (b). Those acts may be preceded or accompanied by some communication, but that communication does not convert the conduct itself into expression. *See Illig-Renn*, 341 Or at 237 ("[T]he fact that persons seek to convey a message by their conduct, that words accompany their conduct, or that the very reason for their conduct is expressive, does not transform prohibited conduct into protected expression or assembly."). Although the act of placing a signature on a petition signature sheet may be an expressive act by the registered voter, we conclude that the act of obtaining a signature by the petition circulator is not itself expressive conduct.

We conclude further that the statute does not otherwise "expressly" or "obviously" impose restrictions "on the substance of any opinion or subject of communication." *Robertson*, 293 Or at 412. As noted, the process of collecting signatures for initiative petitions is regulated by statutes and administrative rules. The single restriction on a circulator's speech is described in ORS 260.555(1), which prohibits a person from "knowingly mak[ing] any false statement regarding the contents, meaning or effect of the petition to any person who signs it, attempts to sign it, is requested to sign it or requests information concerning it." A person who is paid to obtain signatures is not prohibited from speaking or expressing personal beliefs on any topic of the person's choosing or engaging in advocacy or solicitation of signatures on a petition for which the person is a volunteer. Although ORS 250.048(10) may incidentally cause a paid signature circulator to refrain from speaking or advocating for a petition for which the person is a volunteer, the statute does not "expressly" or "obviously" restrict a petition circulator's expression on the substance of any opinion or subject of communication. *See Mehrwein*, 366 Or at 313 (explaining

that a law that restricts conduct without expressly regulating speech is not a *Robertson* category one law directed toward expression, even if the law may affect a person's ability to speak).

Additionally, the statute may be violated merely by obtaining a signature without expressing an opinion or engaging in expressive conduct. For that additional reason, the statute is not a restriction on speech or expression. *See Plowman*, 314 Or at 165 (explaining that a statute that can be violated without speech does not target speech); *Illig-Renn*, 341 Or at 236-37 (observing that a statute that could be applied to more than speech could not be examined under the first two categories of *Robertson* because it did not expressly or obviously restrain expression).

Accordingly, the trial court did not err in concluding that ORS 250.048(10) regulates nonexpressive conduct and does not target expression or the substance of any opinion or subject of communication, and thus is not subject to a facial challenge under Article I, section 8.

We next address plaintiff's challenge under Article I, section 26, which provides:

> "No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [*sic*]."

In arguing that ORS 250.048(10) is a facially invalid restriction on his right to assemble under Article I, section 26, plaintiff contends that the statute expressly limits the conduct of assembling for discussion of public policy. *See Lahamann v. Grand Aerie of Fraternal Order of Eagles,* 202 Or App 123, 134, 121 P3d 671 (2005), *rev den*, 341 Or 80 (2006) ("'[A]ssembling together to consult' mean[s] to gather and deliberate in order to formulate a judgment or policy."). Plaintiff's argument is subject to the same analysis as a facial challenge under Article I, sections 8, *Illig-Renn*, 341 Or at 236, and we reject it for the same reasons discussed above. The statute on its face imposes no express or obvious restriction on the right to assemble for discussion of public

policy. Thus, we conclude that ORS 250.048(10) does not implicate speech and therefore is not facially invalid under Article I, sections 1 or 26.

Even if we were to assume that speech is implicated by the restrictions under ORS 250.048(10) on the act of obtaining signatures as a volunteer while being paid as a petition circulator, we would conclude that the requirement is a reasonable, content-neutral restriction on the time, place, or manner of obtaining signatures and that it advances a legitimate state interest. *See Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 289-90, 132 P3d 5 (2006) (explaining that Article I, section 8, "does not bar every content-neutral regulation of the time, place, and manner of speech").

A law is content-neutral if the particular restriction on expression "applies to all expression, regardless of its subject or content." *Id.* at 287 n 8. Here, even if the restriction in ORS 250.048(10) implicates expression, it is based not on the content or subject matter of the volunteer petition or the circulator's expression, but on whether the circulator is paid.

We reject plaintiff's contention that the restriction is not content-neutral because, in determining whether the statute has been violated, the official must read the petition to determine whether it is one for which the person is authorized to collect signatures. The content of speech is implicated when the subject matter of the speech itself is an element of the offense. The fact that a violation may be proven by reference to documents does not make the content of the documents subject to punishment. *See Plowman*, 314 Or at 167 ("[T]here is a distinction between making speech the crime itself, or an element of the crime, and using speech to prove the crime."). The necessity to refer to the petitions to determine a circulator's compliance with ORS 250.048(10) bears no relationship to the content of the circulator's expression on any topic. We conclude that the restriction is content-neutral.

Plaintiff does not contend that ORS 250.048(10) imposes an unreasonable restriction on the time, place, or

manner of obtaining signatures. When a statute imposes a reasonable and content-neutral time, place, and manner restriction, the question for purposes of Article I, sections 8 and 26 is "whether the restriction advance[s] a legitimate state interest without restricting substantially more speech than necessary." *Babson*, 355 Or at 407-09. We readily conclude that, as explained below, the record on summary judgment demonstrates that the statute's restriction on obtaining signatures by paid circulators advances a legitimate state interest by ensuring the integrity of the paid-signature-gathering process.

Article IV, section 1b, of the Oregon Constitution bans the payment of petition circulators by the signature.[8] Article IV, section 1(4)(a), of the Oregon Constitution authorizes the legislature to "provide by law for the manner in which the Secretary of State shall determine whether a petition contains the required number of signatures of qualified voters." ORS 260.262(2) requires the chief petitioner of any paid petition to keep detailed accounts for the purpose of enforcing that prohibition. The accounts must include "[p]ayroll records for each employee obtaining signatures on the petition or prospective petition showing hours worked, number of signatures collected and amounts paid." ORS 260.262(1)(c); *see also* OAR 165-014-0100.

The summary judgment record includes evidence that allowing paid circulators to also simultaneously collect signatures as a volunteer presents a challenge to the enforcement of accounting and reporting requirements. If, when circulators are being paid to circulate a petition, they are also able to circulate and obtain signatures on other petitions as volunteers, for which no payroll records need be maintained or produced, the secretary is challenged to identify possible violations of the payment-by-signature ban through identifying patterns between the number of signatures collected and the amount paid. Prohibiting paid

---

[8] Article IV, section 1b, provides:

"It shall be unlawful to pay or receive money or other thing of value based on the number of signatures obtained on an initiative or referendum petition. Nothing herein prohibits payment for signature gathering which is not based, either directly or indirectly, on the number of signatures obtained."

petition circulators from simultaneously obtaining signatures on petitions for which they are paid and on petitions for which they volunteer allows the secretary to enforce payroll record-keeping and reporting requirements for paid petition circulation. We are persuaded that ORS 250.048(10) serves a legitimate state interest of enforcing the constitutional ban on payment by the signature.

We further conclude that the statute does so with a minimal restriction on speech. A circulator is prevented from obtaining signatures as a volunteer only during the time when the circulator is being paid to obtain signatures. And, even during paid signature gathering, a circulator is free to advocate or promote support for petitions for which the circulator is volunteering.

In summary, ORS 250.048(10) restricts conduct, not expression, and therefore is not subject to a challenge for facial invalidity under the Oregon Constitution, Article I, sections 8 and 26. If, however, the statute is interpreted to implicate expression, then it is a reasonable content-neutral time, place, and manner restriction on volunteer signature gathering that is based on a legitimate state interest. For those reasons, we conclude that the trial court did not err in rejecting plaintiff's challenge that ORS 250.048(10) is unconstitutional under Article I, sections 8 and 26.

Finally, we turn to the appropriate disposition. As noted earlier, after the trial court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment, it incorrectly dismissed the action instead of issuing a judgment that declares the rights of the parties. *See Western Radio Services Co.*, 297 Or App at 454; *Schroeder v. Clackamas County Bank*, 291 Or App 16, 18, 419 P3d 726, *rev den*, 363 Or 815 (2018) ("[B]ecause it is error to dismiss a claim for declaratory relief unless there is no justiciable controversy, we remand for the issuance of a judgment that declares the rights of the parties.") (Footnote and citation omitted.)). Accordingly, we vacate the judgment and remand the case to the trial court for issuance of a judgment that includes the appropriate declaration. *See City of Corvallis v. State of Oregon*, 304 Or App 171, 190-91, 464 P3d 1127 (2020) (explaining that correct disposition in a

declaratory judgment action is a declaration of the rights of the parties even if it is not the declaration sought by the plaintiff).

Vacated and remanded for entry of judgment declaring rights of the parties.