464 October 16, 2024 No. 729

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Paul BATES,
an individual,
and No Moke Daddy, LLC,
doing business as Division Vapor,
a corporation,
*Plaintiffs-Appellants,*

*v.*

OREGON HEALTH AUTHORITY,
and Patrick Allen, in his official capacity as
Director of Oregon Health Authority,
*Defendants-Respondents.*

Multnomah County Circuit Court
21CV33671; A180270

Leslie G. Bottomly, Judge.

Argued and submitted February 21, 2024.

John Thorpe, Arizona, argued the cause for appellant. Also on the briefs was Herbert G. Grey.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

Plaintiffs brought a free speech challenge to ORS 431A.175(2)(f) and OAR 333-015-0357, which restrict the packaging of inhalant delivery systems, seeking declaratory and injunctive relief. On cross-motions for summary judgment, the trial court granted defendants' motion and dismissed the action, concluding that the statute was not facially unconstitutional and that the trial court did not have jurisdiction to adjudicate plaintiffs' challenge to the administrative rule. Plaintiffs appeal from the judgment dismissing their claims. We conclude that ORS 431A.175 (2)(f) violates Article I, section 8, of the Oregon Constitution, and we therefore reverse and remand.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In 2015, the legislature passed House Bill (HB) 2546, which addressed a number of issues involving "inhalant delivery systems,"[1] commonly known as "vape pens" or "e-cigarettes." Or Laws 2015, ch 158. The bill, among other things, outlawed the sale of such products to minors, banned vaping indoors by adding inhalant delivery systems to the Oregon Indoor Clear Air Act, and, as relevant to the current matter, created certain requirements surrounding the sale and packaging of inhalant delivery systems. *Id.*[2]

---

[1]  "Inhalant delivery system" means:

"(i) A device that can be used to deliver nicotine or cannabinoids in the form of a vapor or aerosol to a person inhaling from the device; or

"(ii) A component of a device described in this subparagraph or a substance in any form sold for the purpose of being vaporized or aerosolized by a device described in this subparagraph, whether the component or substance is sold separately or is not sold separately."

ORS 431A.175(1)(a)(A).

[2]  At the time HB 2546 was passed, inhalant delivery systems were not yet regulated on the federal level. Effective August 2016, the FDA issued a final rule deeming electronic nicotine delivery systems, including "e-cigarettes," to be subject to chapter IX of the Federal Food, Drug, and Cosmetic Act, the Tobacco Control Act. Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, 81 Fed Reg 28,974 (May 10, 2016) (codified at 21 CFR Parts 1100, 1140, 1143). In so doing, the FDA made qualifying vaping products subject to the same requirements that other tobacco products must comply with, such as age limits and warning labels regarding the addictive nature of nicotine. *Id.* The FDA has also prioritized enforcement of its policies as it relates to the impact on minors' access to and use of such products. *See* Enforcement Priorities for Electronic Nicotine Delivery Systems and Other Deemed Products on the Market Without Premarket Authorization, 85 Fed Reg 23,973 (Apr 30, 2020) (noting

ORS 431A.175(2)(f), enacted as a part of HB 2546, states:

"It is unlawful:

"* * * * *

"(f)   To distribute, sell or allow to be sold an inhalant delivery system if the inhalant delivery system is packaged in a manner that is attractive to minors, as determined by the [Oregon Health Authority] by rule."

The Oregon Health Authority (OHA) subsequently promulgated a number of regulations regarding packaging of inhalant delivery systems, including OAR 333-015-0357, which stated:

"(1)   An inhalant delivery system is packaged in a manner that is attractive to minors if because of the packaging's presentation, shape, graphics, coloring or writing, it is likely to appeal to minors.

"(2)   The Authority considers the following non-exclusive list to be likely to appeal to minors:

"(a)   Cartoons;

"(b)   Celebrities, athletes, mascots, fictitious characters played by people, or other people likely to appeal to minors;

"(c)   Food or beverages likely to appeal to minors such as candy, desserts, soda, food or beverages with sweet flavors including fruit or alcohol;

"(d)   Terms or descriptive words for flavors that are likely to appeal to minors such as tart, tangy, sweet, cool, fire, ice, lit, spiked, poppin', juicy, candy, desserts, soda, sweet flavors including fruit, or alcohol flavors; or

"(e)   The shape of any animal, commercially recognizable toy, sports equipment, or commercially recognizable candy."[3]

---

FDA's intent to prioritize enforcement actions against flavored, cartridge-based products, products for which manufacturers had failed to take adequate measures to prevent minors' access to, and products targeted to minors or likely to promote use by minors). We note that our decision here does not affect retailers' obligation to comply with federal law.

    [3] OAR 333-015-0357 was amended in 2023. Because we conclude that the authorizing statute is unconstitutional and do not reach the merits of the rule

Plaintiffs filed a complaint in circuit court seeking declaratory and injunctive relief, asserting that ORS 431A.175(2)(f) and the regulations promulgated by OHA violated Article I, section 8, of the Oregon Constitution[4] by impermissibly infringing upon the right to free speech through the prohibition of truthful, nonmisleading communication of information about legal products based on the content of the communications. Plaintiffs additionally alleged that the statute and regulations were overbroad because they mandated the censorship of more speech than was necessary to protect minors, and were unconstitutionally vague because they failed to give people reasonable notice about what was permitted and what was forbidden.

Defendants filed a motion for summary judgment, asserting that the circuit court did not have jurisdiction to review the facial validity of administrative rules, and maintaining that ORS 431A.175(2)(f) did not violate Article I, section 8. Plaintiffs opposed the motion and filed their own cross-motion for summary judgment.

The circuit court agreed with defendants that it did not have jurisdiction over plaintiffs' challenge to the regulations, noting that "a 'facial' challenge to an agency regulation must be brought in the Court of Appeals under the [Oregon Administrative Procedures Act]." The court further concluded that, applying the framework set forth in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), for evaluating free speech claims, the statute was not subject to a facial challenge because it did not expressly regulate speech, even though it may have had the effect of prohibiting or limiting speech. The court rejected plaintiffs' vagueness challenge without discussion. The court therefore granted defendants' motion for summary judgment and denied plaintiffs' cross-motion, and dismissed the claims.

On appeal, plaintiffs argue that the circuit court erred in granting defendants' motion for summary judgment, raising four assignments of error. Plaintiffs assert that the

challenge, the amendment does not affect our analysis. All references in this opinion are to the version in effect at the time this action was filed.

[4] Article I, section 8 states: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"

trial court erred by: (1) concluding that ORS 431A.175(2)(f) does not violate Article I, section 8; (2) failing to address whether ORS 431A.175(2)(f) is unconstitutionally vague; (3) concluding that it lacked jurisdiction over the challenge to the regulations; and (4) failing to conclude that the regulations are unconstitutional. Defendants maintain that the circuit court did not err in any of those respects.

## II.   ARTICLE I, SECTION 8 ANALYSIS

A.  *Standard of Review*

Whether a statute is facially invalid because it unconstitutionally restricts speech in violation of Article I, section 8, is a question of law that we review for legal error. *Couey v. Clarno*, 305 Or App 29, 33, 469 P3d 790 (2020), *rev den*, 367 Or 496 (2021).

B.  Robertson *Framework*

We begin with the framework for evaluating Article I, section 8, claims, as established in *Robertson*. We first identify the three categories of laws in the *Robertson* framework:

> "The first *Robertson* category encompasses any law that is 'written in terms directed to the substance of any "opinion" or any "subject" of communication.' [*Robertson*, 293 Or at 412]. Laws in that category are unconstitutional on their face, 'unless the restriction is wholly confined within an historical exception.' *Id.* The first category encompasses only statutes that expressly prohibit speech.
>
> "The second *Robertson* category also encompasses only statutes that expressly prohibit speech. A law falls within the second category if it expressly regulates speech but is directed to forbidden effects or harms of the proscribed speech and not to the substance of the communication itself. *Id.* at 415. Laws that fall within the second *Robertson* category are analyzed for overbreadth and are held to be facially invalid if they are overbroad. *Id.*
>
> "The third *Robertson* category describes laws that do not expressly restrict speech but that may have the effect of prohibiting or limiting it. Laws in the third category are not facially invalid, but they are subject to as-applied challenges."

*Couey*, 305 Or App at 34-35.

The parties dispute which category this statute falls under. Plaintiffs argue that ORS 431A.175(2)(f) is a category one law because it restricts a medium of expression (the package) in terms of the message or expressive content; alternatively, plaintiffs argue that it is a category two law aimed at reducing minors' use of inhalant delivery systems by expressly proscribing speech. Defendants maintain that the statute by its plain terms does not restrict expression because there is nothing inherently expressive about the distribution or sale of a product and packaging is not inherently expressive; therefore, the law may only be challenged in an as-applied posture pursuant to *Robertson* category three when it has the effect of reaching speech.[5]

We therefore must determine whether the prohibition on sales of inhalant delivery systems that are packaged in a manner that is attractive to children is a law "directed by its terms at restraining or restricting speech or expression." *City of Nyssa v. Dufloth/Smith*, 339 Or 330, 338, 121 P3d 639 (2005).

C.  *Application*

As noted above, ORS 431A.175(2)(f) makes it unlawful "to distribute, sell or allow to be sold an inhalant delivery system if the inhalant delivery system is packaged in a manner that is attractive to minors, as determined by [OHA] by rule." We conclude that the statute is written in terms directed to the substance of a communication and is therefore a *Robertson* category one law.

In interpreting a statute, we engage in our well-established methodology of considering the text in context and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We engage in that process here to determine precisely what is being regulated. The action that is proscribed by the statute is the distribution, sale, or allowance of the sale of the restricted products. The Supreme Court has held that "[s]elling is a form of communicative behavior that includes speech and may involve goods that are protected expression." *City of Hillsboro v. Purcell*,

_____

[5] As defendants correctly note, plaintiffs have not asserted an as-applied challenge to the statute.

306 Or 547, 555, 761 P2d 510 (1988); *see also City of Eugene v. Miller*, 318 Or 480, 485, 871 P2d 454 (1994) (citing *Purcell* and noting that restrictions on selling can implicate speech). We conclude that the phrasing of the statute in terms of regulating the sale of certain products does not by itself render the statute one that does or does not restrict expression.

We therefore turn to the phrase "packaged in a manner that is attractive to minors." When words are not defined in a statute, we presume that the legislature intended for them to have their ordinary meanings. *Gaines*, 346 Or at 175. "Attractive" is defined as "1a: able to cause (a person or animal) to approach by influencing the will or appealing to the senses *** 2: having qualities that arouse interest, pleasure, or affection in the observer : pleasing[.]" *Webster's Third New Int'l Dictionary* 141 (unabridged ed 2002). Defendants assert that there is nothing inherently expressive about packaging in and of itself, that it could be plain or something purely functional. However, we conclude that the word "attractive," as it refers to the manner in which a product is packaged, refers to the packaging's expressive content: those expressive qualities of the packaging, such as words, color, images, or design that may draw a minor to a product or arouse their interest. It does not refer to the utility or function of the package. We do not find persuasive defendants' assertion that the word "attractive" could have been intended to refer to nonexpressive elements of packaging, such as bundling an inhalant delivery system with a toy.[6] We conclude that the "attractiveness" of the manner of packaging is expressive speech. The statute therefore is a direct restriction of that speech, making it a *Robertson* category one law.

We disagree with defendants' characterization of the Supreme Court's opinion in *State ex rel Rosenblum v. Living Essentials, LLC*, 371 Or 23, 56-57, 529 P3d 939 (2023), as concluding that packaging is not inherently expressive.

---

[6] We have been unable to locate any clear legislative history that explains the meaning of ORS 431A.175(2)(f) other than a single Senate floor statement referring to the intentional targeting of inhalant delivery systems to children through advertisements, kid-friendly flavors, and "flashy packaging." Video Recording, Senate Chamber, HB 2546, May 11, 2015, at 0:36:02 (comments of Sen Elizabeth Steiner Hayward).

In discussing a statute that prohibited a person or business from causing "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services," and concluding that the statute did not regulate speech, the court stated:

> "We have never held that all conduct associated with the sale of goods and services is expressive. Here, the statute could reach such things as the manner in which products are packaged, the location at which they are sold, or even where they are placed on a store shelf, if a likelihood of confusion or misunderstanding were likely to result."

*Living Essentials, LLC*, 371 Or at 56-57. Contrary to defendants' assertion that that passage demonstrates that "the regulation of packaging is not the regulation of expression," we interpret the passage as referring to the clearly non-expressive elements of packaging, similar to physical placement. In the matter at hand, the word "attractive" is what renders the restriction on packaging a restriction on expressive content.

We take guidance from *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988). In that case, the city had enacted a zoning ordinance that required adult bookstores to be located at least 500 feet from any residential zone and, in some cases, at least 1,000 feet from any other adult business, defining adult bookstores as establishments that had a substantial or significant portion of their merchandise depicting sexual activities or nudity. *Id.* at 177-78, 181. The ordinance's introduction purported to address the collateral impact of adult businesses and associated blighted conditions. *Id.* at 184-85. The ordinance did not prohibit the adult bookstores from locating within the city, nor did it purport to limit the content of the materials for sale in the stores. Nonetheless, the Supreme Court held that, in light of the fact that an establishment became prohibited based on the quantity of adult merchandise sold, the ordinance was "flatly directed against one disfavored type of pictorial or verbal communication." *Id.* at 184-85. In response to the city's arguments regarding the ordinance's intended purpose of regulating the effect of speech and not the speech itself, the court noted:

"If the ordinance were so written, it might well be valid on its face and subject only to scrutiny for valid administration; but it is not so written. \*\*\* [The ordinance] undertakes to prevent what the city believes to be the effects of the trade in sexually explicit verbal or pictorial material by describing the content of this communicative material."

*Id.* at 184. The court went on to note that, even though the city had made legislative findings to support the premises for the ordinance, "[i]t is the operative text of the legislation, not prefatory findings, that people must obey and that administrators and judges enforce." *Id.* at 185.

We additionally note and distinguish the Supreme Court's decision in *State v. Stoneman*, 323 Or 536, 920 P2d 535 (1996). In that case, the court grappled with the constitutionality of a statute that criminalized the purchase of a limited and specific kind of pornographic material that depicted actual children engaged in sexually explicit conduct. *Id.* at 539. We had initially determined that the statute was an unconstitutional *Robertson* category one statute, because it focused on the content of the materials that it regulated and made no mention of preventing any supposed harmful effect. *Id.* at 544. The Supreme Court disagreed, acknowledging that although the statute appeared to have contained a content-based proscription on expressive material, the statute could not be read in a vacuum, and in examining that context, the court noted that the prohibited materials in that case *necessarily* involved harm to children—they owed their very existence to the commission of sexual abuse of a child and the commerce of those materials was an extension of that harmful act. *Id.* at 545-46. The court concluded that the statute "prohibited the purchase of certain communicative materials, not in terms of their communicative *substance*, but in terms of their status as the products of acts that necessarily have harmed the child participants." *Id.* at 548. Because the statute was directed at preventing the harm of child sexual exploitation, the court analyzed it as a *Robertson* category two law and assessed it for overbreadth, concluding that it was constitutionally valid. *Id.* at 550.

We view the present case as more similar to *Tidyman* than *Stoneman*: the statute at issue here regulates

expression based on its content, not the effect. The parties do not dispute that limiting minors' use of vaping products is a legitimate legislative purpose. We agree. The circuit court correctly found that there was undisputed evidence that vaping products have harmful effects on children. Again, we agree. The circuit court also took note of legislative materials indicating the legislature's purpose of limiting the harmful health effects on minors caused by using nicotine and vaping products, both from an addiction and health perspective and in terms of the dangers of accidental ingestion. Other provisions of HB 2546 and other statutes are specifically directed toward those goals, including those that outlaw the sale of the products to minors, require products to be inaccessible to patrons without employee assistance unless minors are not permitted in the establishment, and require all inhalant delivery systems to be packaged in child-resistant safety packaging. ORS 167.755; ORS 167.765; ORS 431A.175(2)(e). Plaintiffs do not argue before us that those aspects of the law are unconstitutional. They challenge ORS 431A.175(2)(f).

However, ORS 431A.175(2)(f) is only concerned with the expressive content of the packaging of products legally sold to consenting adults. If the products are packaged in a manner that is not attractive to minors, the sale is lawful; if they are packaged otherwise, the sale is unlawful. The law therefore restrains expression and does not regulate the effect of a sale to a minor or a minor's later use of the product. In *Tidyman*, the court noted:

> "the operative text of the ordinance does not specify adverse effects that constitute the 'nuisance' attributable to the sale of 'adult' materials and therefore does not apply only when these adverse effects are shown to occur or imminently threaten to occur. *** By omitting the supposed adverse effects as an element in the regulatory standard, the ordinance appears to consider the 'nuisance' to be the characteristics of the 'adult' materials rather than secondary characteristics and anticipated effects of the store. Such lawmaking is what Article I, section 8, forbids."

*Tidyman*, 306 Or at 185-86. Here, whether a sale or distribution violates the statute turns on the substance of the packaging itself rather than on any resulting effect. Unlike in *Stoneman*, there is nothing about the expressive content

being regulated here that *necessarily* involves harm to children. Absent an established correlation between the packaging and the actual harm of minors using inhalant delivery systems, the law is not directed at a forbidden effect or harm of the regulated speech. The rationale of *Tidyman* supports our conclusion that ORS 431A.175(2)(f) is a category one law. *See also Living Essentials, LLC*, 371 Or at 46-47 (concluding that the portion of the statute at issue that made it unlawful to represent that real estate, goods or services had attributes that they did not actually have was a category one law because it prohibited speech based on its substance rather than on any resulting effects).

We are not persuaded by defendants' argument that the statute itself contains no operative prohibition on speech because it did not take effect until OHA promulgated rules determining what qualifies as "attractive to minors." As the above analysis demonstrates, the statute is a prohibition on the sale of certain expressive materials. The fact that OHA had to promulgate rules in order to establish which kinds of expressive packaging it deemed attractive to minors does not make the statute itself any less of a law "restricting the right to speak, write, or print freely on any subject whatever," in contravention of Article I, section 8.

We thus turn to the final step of analysis under *Robertson* to consider whether the law falls within a historical exception to the prohibition of Article I, section 8. *Robertson*, 293 Or at 412. Examples include "perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants." *Id.* Defendants do not suggest any basis for finding this law to fall within any historical exception and we are aware of none. We therefore conclude that ORS 431A.175(2)(f) is unconstitutional on its face.

## III. REMAINING ASSIGNMENTS OF ERROR

Plaintiffs assert in their second assignment of error that ORS 431A.175(2)(f) is unconstitutionally vague. Because we have already determined that the statute violates Article I, section 8, we need not reach the vagueness argument.

Plaintiffs' third assignment of error is an assertion that the trial court erred when it concluded that it lacked jurisdiction over plaintiffs' challenge to the OHA regulations. The trial court did not err in that respect. A facial challenge to an agency's rules must be brought under the APA, which vests jurisdiction for such actions in this court, not the circuit court. ORS 183.400(1); *see also Pacific Northwest Bell Telephone Co. v. Eachus*, 107 Or App 539, 543-44, 813 P2d 46 (1991) (acknowledging that a circuit court could have jurisdiction to adjudicate the validity of an administrative rule if such resolution was required for determination of another matter properly before the circuit court, but noting that in that case there was "no separate civil action that places a rule's validity at issue. A direct challenge to a rule must be brought in [the Court of Appeals] under ORS 183.400."). Plaintiffs' action did not raise any separate matters requiring resolution of the validity of the regulations; it simply requested a determination that the regulations were unconstitutional. Therefore the circuit court did not have jurisdiction.

Because the circuit court did not have jurisdiction to adjudicate plaintiffs' facial challenge to the regulations, we do not reach the merits of the regulations' constitutionality. *Id.* at 542 ("If * * * the circuit court never had jurisdiction, [the] appeal from that judgment only confers jurisdiction on this court to decide the jurisdictional issue.").[7]

## IV.   CONCLUSION

In summary, we conclude that ORS 431A.175(2)(f) is an unconstitutional restriction of speech under Article I, section 8, and we therefore reverse the circuit court's judgment dismissing the action. We additionally note that the correct disposition of a declaratory judgment claim is to enter a judgment declaring the parties' rights. *De Lanoy v. Taylor*, 300 Or App 517, 520, 452 P3d 1036 (2019) (When a "party asks for a declaration, it is incumbent on the court to declare the respective rights of the parties."). Accordingly, on remand, the trial court must enter a judgment consistent

---

[7] We acknowledge that, in light of our holding that ORS 431A.175(2)(f) is unconstitutional, the regulations implementing it necessarily will be affected.

with this opinion and declaring the rights of the parties under the law.

Reversed and remanded.